BRIAN M. BENSON ET AL. *v.* THE BOARD OF
EDUCATION OF MONTGOMERY COUNTY

[No. 118, September Term, 1976.]

*Decided June 2, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Cheryl C. Burke*, with whom were *Alper, Schoene, Horkan & Mann* on the brief, for appellants.

*Amici curiae* brief filed by American Association of Retired Persons et al., *Harmon Burns, Jr.*, and *Miller, Singer, Michaelson, Brickfield & Raives* on the brief.

*Frank Cummings*, with whom were *Michael P. Barry, Marshall, Bratter, Greene, Allison & Tucker* and *John E. Powell* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Teachers in the public schools of Montgomery County may receive benefits upon normal retirement from two sources, the Teachers' Retirement System of the State of Maryland (the State Plan) and the Montgomery County Public Schools Employees' Retirement System (the County Plan). Referred to as a "service retirement allowance" in the State Plan and as a "base pension" in the County Plan, each is computed on

a percentage of the teacher's average final compensation multiplied by the number of years of his credited service. Maryland Code (1957, 1975 Repl. Vol.) Art. 77, § 195 (2); County Plan, § 8.1. The County Plan provides a higher percentage rate than the State Plan but sets off against the amount payable under it the amount payable under the State Plan. Thus, with respect to teachers, the County Plan merely provides a supplement to the State Plan.

The litigation before us stems from the County Plan formula for computing the base pension. The issue for decision is whether the Board of Education of Montgomery County (the Board), in amending the County Plan in 1969, froze the rate at which the offset was to be computed at the percentage then existing. If so, that rate could not thereafter be increased despite any increase in the rate of service retirement allowances under the State Plan. To put it another way, the rate of the County Plan supplement could not thereafter be diminished. The immediate question is whether, under the present status of both Plans, the rate of the supplement is .3333% or .1818% of average final compensation.

The issue is presented in a declaratory class action in which all teachers retiring at their normal retirement date entitled to service retirement payments under both Plans are represented. The action encompasses not only the teachers in that category who have retired but also those presently working who later retire. Thus, the issue has a substantial and far-reaching impact.

I

A perspective of the issue for decision is best attained by tracing the history of the County Plan. The General Assembly established the Teachers' Retirement System of the State of Maryland as of 1 August 1927 for the purpose of providing retirement allowances and other benefits for teachers of this State.[1] Maryland Code (1957, 1975 Repl.

---

1. "'Teacher' shall mean any teacher, helping teacher, principal, supervisor or superintendent, attendance officer, or clerk employed in a

Vol.) Art. 77, § 190 *et seq.* It also established, effective 1 October 1941, the Employees' Retirement System of the State of Maryland, but excluded therefrom any person who was a member of or eligible for membership in the State Plan. Maryland Code (1957, 1970 Repl. Vol.) Art. 73B, § 1 (3) and § 2. As of 1 August 1965 the County Council of Montgomery County, on recommendation of the County Personnel Board, withdrew its officers and employees who were members of the Employees' Retirement System of the State of Maryland and who consented to such withdrawal and transferred them as authorized by Maryland Code (1957, 1970 Repl. Vol.) Art. 73B, § 28, to a more favorable system which it established, the Employees' Retirement System of Montgomery County. Montgomery County Code (1972) § 33-34 *et seq.* The Superintendent of Schools of Montgomery County informed the Board of Education of the County Council's action. The Board requested the Superintendent to have a study made of the County government's "very attractive" plan to determine the feasibility of providing similar retirement benefits for Board of Education employees. A consulting actuary was employed to conduct the study. *See* Board Resolutions FS-66-6-8 and FS-66-8-12. On the strength of the study submitted, the Board resolved that a retirement system be established. Board Resolution FS-66-11-13 as amended by Resolution FS-67-7-11. A plan was proposed which the Board approved "in principle." Board Resolution No. 634-66. On 17 April 1967 the Board approved the County Plan to be effective 1 January 1968 and authorized the Superintendent of Schools to negotiate with Aetna Life Insurance Company, the agency administering the Employees' Retirement System of Montgomery County, to administer it. Board Resolution No. 252-67. A group annuity contract with Aetna was negotiated and approved. Board Resolution No. 431-67.

The Board offered the Plan to its employees. All teachers and other persons employed by the Board on a full time

---

public day school within the State or in any State educational institution supported and controlled by the State." Maryland Code (1957, 1975 Repl. Vol.) Art. 77, § 190 (3).

basis or on a part-time basis on a regularly scheduled 20-hour work week, and members of either the Teachers' or Employees' Retirement System of the State were eligible for membership. County Plan, § 1.1 (e). Membership commenced on 1 January 1968 for those who elected to become members on or before that date, and on the date of employment, as a condition of employment, for those employed after 1 January 1968. An eligible employee who elected not to become a member retained his existing retirement status. §§ 3.1 and 3.2. Supplemental retirement benefits were provided for the Plan's members who were members of the Teachers' Retirement System of the State of Maryland and full retirement benefits were payable to its members who were not eligible for membership in that State Plan. This was spelled out in § 8.1. The formula for the amount of the yearly base pension payable at normal retirement date [2] was 1.75% of average final compensation [3] multiplied by years of credited service [4] to a maximum of 36 years less the yearly retirement benefit, if any, payable under the State Plan for such years of credited service.

It is clear that under the County Plan formula each eligible employee of the Board, whether serving as a teacher or in some other capacity, who retired at his normal retirement date, received the same amount of base pension in the aggregate. The only difference in the case of a teacher was that the amount payable under the County Plan was

---

**2.** The normal retirement date of a member is the first day of any month elected by the member after he has reached his 60th birthday or has completed 30 years of credited service. County Plan, § 4.1 as amended. Originally 35 years of credited service were required. Retirement is mandatory at age 70. § 4.3.

**3.** Average final compensation is the average earnable compensation of an eligible employee for the three consecutive years of service as an eligible employee during which his earnable compensation is highest, or if he had less than three years of service, then his earnable compensation for his total service. County Plan, § 1 (k) as amended. See Maryland Code (1957, 1975 Repl. Vol.) Art. 77, § 190 (15). Formerly, four years of service were required.

**4.** What comprises "credited service" is set out in § 7 of the Montgomery County Plan. Maryland Code (1957, 1975 Repl. Vol.) Art. 77, § 194 deals with "creditable service" under the State Plan.

reduced by the amount paid under the State Plan. The total amount received, however, remained unchanged.

When the County Plan was adopted the yearly retirement benefit under the State Plan was as originally established at the rate of 1.4286% (1/70) of average final conpensation.[5] Maryland Code (1951) Art. 77, § 109 (2) (c). Therefore, the County Plan supplement was .3214%, calculated by deducting the 1.4286% under the State Plan from the 1.75% under the County Plan. By Acts 1969, ch. 168, approved 23 April 1969 and effective 1 July 1969, the rate under the State Plan was increased to 1.6667% (1/60). The supplement under the County Plan thereby was reduced to .0833%. The Montgomery County Superintendent of Schools brought this to the attention of the Board by a memorandum dated 16 April 1969. Pointing out that the net effect of the State's action was to reduce the supplement from the County Plan unless action was taken to revise the County Plan formula to include the increase in the State Plan, and explaining how the increase could be properly financed, he suggested that the County Plan formula be revised to reflect the increase in the State Plan formula from 1/70 to 1/60. He recommended that

> the Montgomery County Public Schools Employees' Retirement System formula be revised from 1.75% to 2.0% for each year of credited service to a maximum of 36 years minus retirement income received from the State.

The Board accepted the recommendation. The County Plan was amended merely by substituting "two percent (2%)" in lieu of "one and three-quarters percent (1³/₄%)" in paragraph (a-1) of § 8.1. The section, unchanged except for the percentage amount, then read:

> 8.1 *Amount of base pension at normal retirement date.* The yearly amount of base pension for a member who retires from the service of the

---

5. Unless otherwise indicated, reference hereinafter to a percentage refers to percentage of average final compensation.

Montgomery County Public Schools on his normal retirement date will equal (a) minus item (b):

(a) item (a-1) multiplied by item (a-2):

   (a-1) two percent (2%) of his average final compensation;

   (a-2) his years of credited service, up to a maximum of thirty-six years of credited service;

(b) the yearly retirement benefit, if any, payable to the member under the Teachers' Retirement System with respect to the period of credited service considered in item (a-2).

   Years of credited service of less than a full year will be prorated and any days of credited service in excess of fifteen days shall be equal to one month.

Under the formula as amended the County Plan supplement was .3333% — 2% under the County Plan less 1.6667% under the State Plan. Base pensions to those entitled were paid accordingly, and all went well.

In 1973 the rate under the State Plan was again increased. By Acts 1973, ch. 459 (House Bill 1264) and ch. 460 (Senate Bill 939), the provisions of which were identical, approved 21 May 1973 and effective 1 July 1973, the average final compensation under the State Plan was set at 1.8182% (1/55). If the County Plan rate remained at 2%, the increased State Plan rate had the effect of reducing the County Plan supplement by .1515% to .1818%.

Aetna, however, took the view that computation of the benefit level had to be made as of the date the member employee retired with no adjustment to be thereafter made. It continued to pay annuities to former Board employees who retired on or before 30 June 1973 without reduction in the amount of the supplement under the County Plan. But the .1515% reduction in the supplement was applied to those

who had retired on or after 1 July 1973. The result was that a retired employee of the Board who was entitled to benefits under both Plans and who had retired before 1 July 1973 received a total pension at the rate of 2.1515% — 1.8182% under the State Plan plus .3333% under the County Plan. Such employees who had retired on or after 1 July 1973 received a total pension at the rate of 2% — 1.8182 under the State Plan plus .1818% under the County Plan. And, of course, those retired members who were not entitled to retirement benefits under the State Plan received a base pension at the rate of 2%.

The Superintendent of Schools brought all this to the attention of the Board in a memorandum dated 11 September 1973. He recommended that the benefits which were being extended to members of the County Plan who retired after 1 July 1973 be passed on, to the extent the budget permitted, to those who retired before that date. He prepared and submitted an amendment to § 8.1 and a resolution for its adoption by the Board. The proposed amendment substituted "two and eighty-five thousandths percent (2.085%)" as the rate of average final compensation in place of "two percent (2%)" in paragraph (a-1) of § 8.1. No other change was suggested.

The Board did not adopt the proposed amendment.[6] It explained its position in Board Resolution No. 545-73. In a series of "whereas clauses" it set out the then existing provisions of § 8.1, noted what changes the General Assembly had made in the State Plan, and declared:

WHEREAS, It was the intention of the Board of Education, in adopting Section 8.1 of the [County]

---

6. Acts 1973, ch. 459 and 460 made changes in the State Plan in addition to increasing the base pension payable. The Superintendent of Schools also recommended that these changes be reflected in the County Plan and the proposed amendment and resolution included them. They reduced the years of credited service for normal retirement date from 35 to 30, § 4.1 (b); added a section dealing with credited service for out-of-State teaching service, § 7.13; changed the provisions concerning adjustments, § 10; provided for vesting upon 5 years of credited service rather than 10 years, § 12.2; and made certain changes in the lump sum benefits, § 13. The Board accepted the recommendation with regard to these matters and adopted the amendment proposing them. Board Resolution No. 544-73.

Plan, to provide a benefit which, when combined with a retiree's benefit under the state system, would produce a total benefit of 2.0% of average final compensation multiplied by years of credited service, up to a maximum of 36 years of credited service, and not to provide, by giving effect to postretirement state benefit increases, a total exceeding such 2%, and

WHEREAS, A question has arisen as to whether Section 8.1 of the [County] Plan provides that retired Montgomery County members of the State Retirement System who received as of July 1, 1973, increased benefits under that system have the right to continue to receive the same benefits under the [County] Plan as they received before July 1, 1973, and

WHEREAS, The Board of Education believes that Section 8.1 of the [County] Plan requires that a retiree receiving an increase in state benefits after retirement should receive a corresponding decrease in benefits under the [County] Plan, so that the total benefits such employee receives under both plans continues to be based on 2% of average final compensation, . . . .

Stating its belief that "its interpretation of § 8.1 was necessary to avoid inequities in benefits as between members who retired before 1 July 1973, and members who retired or will retire thereafter," it resolved that the Superintendent of Schools "in the name of the Board, is authorized and directed to retain an attorney, approved by the Board, and to commence an appropriate proceeding in the Circuit Court [for] Montgomery County seeking a declaratory judgment to declare the rights of members of the [County] Plan under Section 8.1 thereof, as described above."

On 17 October 1973 the Board instituted a class action in the Circuit Court for Montgomery County against Aetna and Brian M. Benson, "individually and as a representative of

the class of persons" who retired under the State Plan and the County Plan on or before 30 June 1973. The action sought a judgment declaring that the rights of retirees who were members of the class represented by Benson were as interpreted by the Board in its Resolution No. 545-73. The Bill of Complaint also prayed for an injunctive order directing Aetna to conform to such interpretation. John M. King, Marjorie L. Van Dien, Marvel B. Hess, Pete V. Treibley and Phyllis Robinson, all members of the County Plan, intervened. Under a consent order, King and Van Dien were "accepted as representatives of the class of persons formerly employed by the Board who retired under the State Plan and the [County] Plan on or after 1 July 1973. . . ." Hess, Treibley and Robinson were deemed "to represent only the class of persons currently employed by the Board who are members of both the State Plan and the [County] Plan." Thus, the action bound those who retired before 1 July 1973 (the Benson class), those who retired on or after 1 July 1973 (the King class), and those who had not yet retired (the Hess class).

The chancellor was in accord with the view of the Board. He adjudged that § 8.1 stood as amended in 1969. He declared that under its terms the amount to be deducted was to be "upon the benefit level under the State Plan" at the time each payment is made under the County Plan. Thus, "any post-retirement increase in the benefit level which a member receives under the State Plan shall have the effect, under the [County] Plan, of a post-retirement increase in the deduction for such benefits under Section 8.1 (b) of the [County] Plan, and shall cause an equivalent decrease in the supplemental benefits payable under the [County] Plan to such member." In short, the total pension payable under both Plans was at the rate of 2% of average final compensation. He ordered Aetna henceforth to conform to the interpretation of § 8.1 as

declared and not to pay benefits to any members which, taken together with benefits under the State Plan, would produce aggregate benefits based on more than 2% of final average compensation. Members of the County Plan, however, were not required to refund to Aetna or to the Board any amount theretofore paid under the County Plan in excess of the amounts provided in the court's decree.

Benson and the five intervenors appealed.[7] The Court of Special Appeals affirmed the judgment in a per curiam opinion. *Hess v. The Board of Education of Montgomery County*, No. 1095, September Term, 1975, filed 20 September 1976, unreported. Benson, representing the class of members who retired before 1 July 1973, and King and Van Dien, representing the class of members who retired thereafter, filed a petition for the issuance of a writ of certiorari. We granted the petition.

II

Much of petitioners' argument before us is devoted to their claim that the pension rights of members of the County Plan vested either on the date of employment or, in the alternative, on the date of retirement, and may not thereafter be diminished. The Board flatly concedes that the rights are fully vested.[8] Therefore, whether the rights are vested is not before us. The true question is what are the rights which have vested with regard to the base pension under § 8.1.

The County Plan is a mutual contract between its

---

7. Aetna did not pursue its view at the trial. It took no position with respect to the amount of pension payable and informed the court that it would abide by whatever the court determined.

8. Under the provisions of §§ 12.1 and 12.2 of the County Plan, benefits vest upon the completion of five years of credited service. *See* note 6 *supra*.

members and the Board.[9] Under its terms the members receive benefits in return for contributions paid and the Board bestows benefits in return for contributions received.[10] The contract arose from the offer made by the Board to its employees in 1967. Those employees who elected to join thereby accepted the offer and a contract resulted, effective, by the terms of the offer, on 1 January 1968. After that date, membership in the Plan was a condition of employment by the Board, and the acceptance of such employment was an acceptance of the offer presented by the Plan, resulting in a contract binding the new employee and the Board. *See Maryland Supreme Corporation v. Blake Co.*, 279 Md. 531, 539-546, 369 A. 2d 1017, 1023-1027 (1977). Therefore, what is involved here is simply the interpretation of a contract.

As a contract, the County Plan is interpreted under the objective test, and "the application of this test means that where the language is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed; not what the parties intended the contract to mean, but what a reasonable person in the position of the parties would have thought it meant. . . ." *Roged, Inc. v. Paglee*, 280 Md. 248, 254, 372 A. 2d 1059, 1062 (1977), citing *Billmyre v. Sacred Heart Hosp.*, 273 Md. 638, 642-43, 331 A. 2d 313, 316-17 (1975); *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 327-29, 301 A. 2d 12, 17-18 (1973); *U.S.I.F. Triangle v. Rockwood Dev. Co.*, 261 Md. 379, 383-84, 275 A. 2d 487, 489-90 (1971); *Slice v. Carozza Prop., Inc.*, 215 Md. 357, 368, 137 A. 2d 687, 693 (1958).

Petitioners argue that when § 8.1 of the County Plan was amended in 1969 the supplement of .3333% thereby provided by the formula under which the base pension was

---

**9.** Apparently petitioners agree. They state that "the vast majority of case law precedents . . . hold that pension rights are contractual . . ." and speak in terms of their "vested contractual rights to their State pension payments." Petitioners' brief pp. 11 and 27.

**10.** Under the County Plan as amended a member contributes 5.5% of his earnable compensation. County Plan, § 5.1. Five percent of the contribution of a teacher goes to the State Plan. The Montgomery Public Schools also contribute to the Plan. County Plan, § 6.

determined became vested and could not thereafter be diminished. This argument is bottomed on Board Resolution No. 224-69. The "whereas" clauses of that Resolution gave the background of the proposed amendment. The clauses noted the 1.75% rate on which the County Plan base pension was based and that the member's contribution had been raised to a standard amount of 6% of earnable compensation. They set out that the rate for the base pension under the State Plan had been increased "from 1/70 (1.4285%) to 1/60 (1.6667%)" so that retired Montgomery County teachers would receive an increase in their income from the State Plan of $16\frac{2}{3}$%, which was financed by increasing the interest assumption rate on retirement system funds from 4% to $4\frac{1}{2}$%. They declare that the proposed increase in the County Plan "from 1.75% to 2.0% for each year of credited service is 14.28% and can be financed without increasing local effort." The operative clause followed. It read:

> *Resolved,* That the Montgomery County Public Schools Employees' Retirement System be amended to provide 2.0% for each year of credited service, to a maximum of 36 years, times average final compensation less retirement income from State Teachers' Retirement System (1.6667%) for the same number of years of credited service.

The petitioners claim that this Resolution "is the only source from which to determine the provisions of the 1969 amendment to the terms of the pension system." They contend that it was this Resolution which made the change in the pension system. They seize on the parenthesis "(1.6667%)" in the operative clause as establishing

> a yearly benefit rate equal to 2% minus a State pension rate defined as 1.6667%. The words of the resolution themselves do everything except perform the simple, and hardly ambiguous, arithmetical operation needed to determine that the benefit rate established by the Board in the resolution is 0.3333% of average final compensation.

Aside from what we believe to be the undue import which petitioners give to the parenthesis,[11] the Resolution is not part of the contract. The proper source from which to determine the provisions of the 1969 amendment to § 8.1 is the amendment itself.[12] What petitioners overlook is the manner in which the County Plan shall be amended. Its § 20.1 provides:

> Upon preparation and recommendation by the Superintendent of Schools of amendments of the retirement system, the Board of Education may adopt and put into effect such amendments by resolution, provided any increase in benefits enacted thereby is adequately funded. No amendment shall reduce the amount of any accrued base pension which has been covered by a reserve held in the system, the term of monthly payments, or delay the due date of any payment, without the consent of the member thereto; . . . .

The section continues with provisions for changes to reflect cost of living adjustments. It is the amendment which controls; the resolution merely served to adopt the amendment recommended. As we have indicated, what the Superintendent recommended to the Board in his

---

11. A parenthesis is "an amplifying or explanatory comment inserted in a passage to which it may be grammatically unrelated . . . ." Webster's Third New International Dictionary of the English Language, Unabridged (1968). In light of the recommendation of the Superintendent of Schools and the amendment as adopted, it appears that all the parenthesis did was to explain that the then existing State rate was 1.6667 %. We do not think that greater importance can be reasonably ascribed to it.

12. Under date of 11 February 1970 petitioner Benson, then the Director of Financial Services of the Board of Education of Montgomery County sent Aetna a copy of the amendment, certifying that the County Plan was amended in accordance therewith. On 4 May 1970 Aetna formally acknowledged receipt of the amendment and agreed to include it in the Group Annuity Contract. The amendment was inserted in the official Plan which was received in evidence at trial. Section 22 of the County Plan provides: "This Retirement System, and the contract entered into between the Board of Education of Montgomery County and the funding agent shall be filed with the Insurance Department of the State of Maryland and the Internal Revenue Service, United States Treasury Department." There was evidence that the "official repository" of "the official plan documents" was the Division of Insurance and Retirement under the direction and control of the Director of Financial Services.

memorandum of 16 April 1969 was that the County Plan "formula be revised from 1.75% to 2.0% for each year of credited service to a maximum of 36 years minus retirement income received from the State." The amendment was drawn precisely in accordance with this recommendation and was adopted as drawn. Neither the recommendation nor the amendment fixed the required deduction of benefits received from the State at 1.6667% or any other percentage. What the State in fact paid was the amount to be deducted. No change whatever was made in paragraph (b) of § 8.1 dealing with the deduction. The parenthesis did not appear in the amendment. To reach the result for which petitioners strain, a qualification reading substantially "but in no event in an amount greater than that computed on the basis 1.6667% of average final compensation" would have to be added to paragraph (b). That qualification was not expressly made, and it may not be supplied by implication.

The language of § 8.1 of the County Plan as amended is plain and unambiguous, leaving no room for construction. The vested right it bestows is what it clearly sets out: the yearly amount of base pension for a member who retires at his normal retirement date is 2% of his average final compensation times not more than thirty-six years of credited service less the yearly benefit payable under the State Teachers' Plan for the same period of credited service. There is no qualification of the amount to be deducted; it is not an amount permanently fixed or frozen at a certain level. Whatever from time to time is payable under the State Plan is to be deducted from the amount payable from time to time under the County Plan.

We hold, therefore, that under § 8.1 of the County Plan as it now stands, and the existing law controlling the State Plan, the supplement is at a rate of .1818% of average final compensation. In other words, the amount to be deducted under § 8.1 (b) was not fixed at .3333% but is presently .1818% so as to reflect the increase in the rate under the State Plan. As a consequence, under the existing law, all members of the County Plan receive a base pension in the

aggregate which is at a rate of 2% of their respective average final compensation.[13]

Petitioners argue that decreasing the amount of supplement under the County Plan "frustrates the intent of the State Legislature by making any increase in benefits redound to the Board of Education rather than the teachers." They assert that "[h]ad the Maryland State Legislature intended that improvements or increases in its pension plan benefit the Board of Education of Montgomery County, it would have said so." In support of this point, petitioners observe that by reason of the decrease in the supplement under the County Plan there would be a savings to the Board of some $1.9 million. They characterize this as a "windfall," and urge us to construe the County Plan "to effectuate the intent of the Legislature to benefit teachers, not the Board of Education." The short answer is that there is no act of the General Assembly which ties the County Plan into the State Plan, directly or indirectly. The General Assembly has simply not legislated with regard to the County Plan or indicated an intent, expressly or by implication, with respect to the base pension to be paid under the County Plan. The State statute provides that members of the State Plan receive a benefit based on 1.8182% of average final compensation. This was the plain legislative intent. The County Plan does nothing to thwart this intent. The contention that the County Plan formula frustrates the intent of the State Legislature by operating to decrease the amount paid under the County Plan is without merit. Nevertheless, we are constrained to make several observations concerning the "windfall" to the Board, because the implication is that this is insidious. There was evidence that when the County Plan was first established credit for

---

13. The Superintendent of Schools in a memorandum to the Board under date of 11 September 1973 concerning the 1973 increase in the benefit under the State Plan, indicated that Aetna in paying members who had retired prior to 1 July 1973 at the rate of 2.1515% was following legal opinion that such members "had almost an implied contract" for the .3333% rate for the supplement. Certainly "an almost implied contract" cannot be considered as a vested legal right to that rate so as not to be susceptible of diminution.

past service was given with no corresponding contribution; past service was credited "as if" contributions had been made. Thus, the Plan started with "a very substantial unfunded accrued liability" and this must be paid by the Board. The Board funded this liability over 30 years and is "not anywhere near caught up." Also, there is a cost of living escalator built on top of the 2% of the average final compensation which is paid by the Board. In such circumstances the action of the Board in refusing to increase the base pension payable under its Plan cannot be said to be arbitrary or in anyway improper. On the contrary, it tends to preserve the integrity of the Plan.

Petitioners claim error in that the chancellor in rendering his judgment considered "secondary sources" rather than the official action of the Montgomery County Board of Education. The decree entered was proper. It is, of course, the decree, not the opinion of a court which governs. *Hudson Bldg. Supply Co. v. Stulman*, 258 Md. 304, 306-307, 265 A. 2d 925 (1970); *Jones v. Endslow*, 23 Md. App. 578, 585, 328 A. 2d 339 (1974).

> *Judgment affirmed; costs to be paid by petitioners.*