ANNE ARUNDEL COUNTY, MARYLAND *v.* CROFTON
CORPORATION ET AL.

\* \* \*

MARYLAND SOUTHEASTERN CORPORATION *v.*
CROFTON CORPORATION

[No. 138, September Term, 1978.]

*Decided January 28, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ▮ORTH, COLE and DAVIDSON, JJ.

*John M. Court, Assistant County Solicitor,* with whom was *Michael R. Roblyer, County Solicitor,* on the brief, for Anne Arundel County, Maryland, one of appellants. *Lee E. Landau,* with whom were *S. Leonard Rottman* and *Tabor & Rottman* on the brief, for Maryland Southeastern Corporation; other appellant.

*Joseph M. Roulhac,* with whom were *Robert C. Fowler* and *Smith, Somerville & Case* on the brief, for Levitt & Sons, Inc. et al., part of appellees. *Frank C. Serio* for Crofton Corporation, another appellee.

DAVIDSON, J., delivered the opinion of the Court.

This case presents three questions. The first question is whether the Anne Arundel County Sanitary Commission had authority to enter into a contract with a private developer which established charges for sewer and water connections. The second question involves the duration of that contract. The third question concerns the impact upon such a contract

of subsequent legislation enacted by the Anne Arundel County Council which established uniform charges for sewer and water connections higher than those established by the contract.

In 1963, appellee, Crofton Corporation (Crofton), owned 1,257 acres of land in Anne Arundel County which it wished to develop. At that time neither water nor sewer service was available. In order to proceed with development, Crofton, on 8 January 1964, entered into a contract (1964 Contract) with the Anne Arundel County Sanitary Commission (Commission). Crofton agreed to "construct, own, and operate" certain sewerage and water systems, designed to service its 1,257 acre tract, and to transfer the ownership of any completed stage or stages of those facilities to the Commission, at no cost, within 66 months. The Commission, which then had the authority to establish charges for sewer and water connections, agreed to permit Crofton to connect its sewerage facilities to the Commission's Patuxent Sewerage Treatment Plant, and to charge Crofton $235 for each residential sewer connection as Crofton's share of the capital cost of the Patuxent plant. Because Crofton was to construct the entire water system at its own cost, the Commission agreed to make no charge for any water connection. The 1964 Contract did not expressly provide for a specific termination date.

In 1965, the Charter of Anne Arundel County was adopted. Anne Arundel County Code (1967), Appendix A. The Commission was abolished and its authority to establish charges for sewer and water connections was transferred to the Anne Arundel County Council (County). Anne Arundel County Code (1967), § 15-100; Charter of Anne Arundel County, § 539. Anne Arundel County Code (1967), § 17-600 provided that all owners of real estate should pay charges for water and sewer connections. Section 17-605 and § 17-606 [1] established the amount of those charges. Anne Arundel County Code (1967), § 17-614 provided:

"And be it further enacted, that no presently

1. Then codified as Anne Arundel County Code (1957), § 22-76. *See* Laws of Anne Arundel County (1965), Bill No. 30, § 1.

existing obligation or contract right shall in any way be impaired by the provisions of this act." [Laws of Anne Arundel County (1965), Bill No. 30, § 4, effective 1 July 1965.]

In 1967, 1972, and 1976, the County dramatically increased the charges for sewer and water connections.[2] On each of these occasions, the County retained the provision that no existing obligation or contract right should in any way be impaired. Anne Arundel County Code (1967), § 17-614.

In 1967, Crofton began to sell portions of its 1,257 acre tract to other developers.[3] The County continued to charge the 1964 Contract amount, and not the statutory amount, for water and sewer connections made within the 1,257 acre tract.

On 21 November 1968, Crofton sought a three-year extension of the time within which to complete the construction of the water and sewerage facilities and their transfer to the County. In a letter dated 26 February 1969, the County, while denying the requested extension, said:

"The Office of the County Solicitor has reviewed the question as to whether or not Crofton would be allowed to continue connecting to water and wastewater systems at 'Area Service Charges' agreed to in the contract of January 8, 1964, after they transferred ownership of the utilities to Anne Arundel County on July 9, 1969. They have ruled that the original agreement was entered into prior to enactment of Bill 28-67 and, therefore, the contract of January 8, 1964, is in full force and effect and is not negated by subsequent legislation in Bill 28-67."

2. Laws of Anne Arundel County (1967), Bill No. 27-67 and Bill No. 28-67, enacted 3 July 1967; Laws of Anne Arundel County (1972), Bill No. 118-72, enacted 10 August 1972; Laws of Anne Arundel County (1976), Bill No. 63-76, enacted 3 August 1976.

3. These developers included Levitt Residential Communities, Inc., Levitt & Sons, Inc., Harbor Investments, Inc., Tradewinds Investment Corporation, Maryland Southeastern Corporation, and Lake Louise, Inc.

Thus, although the requested extension was denied, the County made it clear that after the facilities were transferred, the 1964 contractual charges would continue to apply.

By July, 1969, only half of the water and sewerage facilities necessary to serve the 1,257 acre tract when fully developed had been completed. On 9 July 1969, Crofton transferred to the County the completed portions of the water and sewerage facilities. Throughout this period, the County continued to charge the 1964 Contract amount for water and sewer connections.

Thereafter, in 1969, 1970, and 1972, the County entered into contracts with Levitt & Sons, Inc., Harbor Investments, Inc., and Crofton, respectively, concerning the construction of water and sewer facilities. In each of these contracts, the County expressly agreed that the 1964 Contract charges, rather than the statutory charges, would be applied. Similar contracts with Levitt Residential · Communities, Inc., Tradewinds Investment Corporation, Maryland Southeastern Corporation, and Lake Louise, Inc., made in 1971 and 1972, contained no such provision. Between January, 1964 and December, 1972, the County charged Crofton and the developers (developers) the 1964 Contract amount for sewer and water connections.

On 15 December 1972, the County asserted that the 1964 Contract had terminated on 9 July 1969 and, therefore, the developers had to pay the applicable statutory charges for all water and sewer connections which had been made after that date. The developers refused to pay.

On 18 May 1973, in the Circuit Court for Anne Arundel County, the County filed a petition for declaratory judgment and injunctive relief. It sought to enjoin the developers from making any further connections unless they paid the statutory connection charges. It also sought a determination of the amount of the charges incurred by the developers since 9 July 1969. On 11 July 1974, the Court of Special Appeals, in an unreported opinion, affirmed the trial court's denial of an interlocutory injunction.

On 4 August 1975, the trial court granted motions for

summary judgment filed by Crofton, Harbor Investments, Inc., and Levitt & Sons, Inc. Each had been party to an agreement made after 1969 which expressly provided that the 1964 Contract charges would govern. On 8 April 1976, this Court entered an order dismissing as premature an appeal from the trial court's order granting the motions for summary judgment.

In May, 1977, the County's suit against Levitt Residential Communities, Inc., Maryland Southeastern Corporation, and Tradewinds Investment Corporation was tried. In a decree dated 30 March 1978, the trial court declared that the County had the authority to enter into the 1964 Contract governing the amount to be charged for the water and sewer connections; that the 1964 Contract had not terminated in July, 1969, but was in full force and effect and would terminate on 8 January 1984; and that the statutory charges were not applicable during the contract period. It concluded that the County was entitled to collect only the 1964 Contract charges and not the statutory charges. It entered judgment in favor of the developers,[4] and dismissed a cross-claim filed by Maryland Southeastern Corporation against Crofton. The County and Maryland Southeastern Corporation appealed. We issued a writ of certiorari to the Court of Special Appeals before consideration by that Court.

Chapter 676, § 3 of the Laws of Maryland (1927) established the Anne Arundel County Sanitary Commission. Sections 4, 13, 16, 17, and 18 established that the Commission had authority to engage in a variety of activities necessary to achieve its purposes.[5] It had authority to enter into any

---

4. On 2 January 1974, by agreement of the parties, the trial court had dismissed with prejudice the County's suit against Lake Louise, Inc.

5. § 4 provided in pertinent part:

"[T]he members of said Commission shall be a body corporate . . . with the right . . . to sue and be sued, and to do *any and all other corporate acts for the purpose of carrying out the provisions of this Act.* Whenever it shall be deemed necessary by said Commission *to take or acquire any land, structures or buildings . . . for the construction, extension or maintenance of any water main, sewer or appurtenance thereof,* or any sewerage disposal plant, reservoir, water filtration plant, tank or pumping station, *or for the execution by the Commission of any other power* [or] *function* vested in it by this Act, *said Commission may purchase the same from the owners,*

contracts necessary for the provision of water and sewerage services, including contracts for the purchase or acquisition of lands, structures, buildings, and privately owned and operated water and sewerage systems. In addition, it had the authority to establish water and sewer connection charges.

The 1964 Contract between Crofton and the Commission provided that Crofton build and operate a privately owned water and sewerage system which would ultimately be acquired by the County in exchange for, among other things, fixed favorable water and sewer connection charges. The Commission had the authority to enter into such a contract in order to provide such services.

While it is clear that the Commission had the authority to

---

or failing to agree with the owner or owners thereof, may condemn the same...." (Emphasis added.) [*See* Anne Arundel County Code (1967), § 15-202(b); Anne Arundel County Code (1957), § 22-45.]

§ 13 provided in pertinent part:

"That [for] every water and sewer connection ... the Commission shall make such charge as it shall determine to be reasonable...." [*See* Anne Arundel County Code (1957), § 22-76.]

§ 16 provided in pertinent part:

"[S]aid Commission shall have full power and authority ... *to enter into any ... agreement concerning any ... matter deemed by the Commission to be necessary, advisable or expedient* for the proper construction, maintenance, and operation of the water supply, sewerage or drainage systems...." (Emphasis added.) [*See* Anne Arundel County Code (1957), § 22-108.]

§ 17 provided in pertinent part:

"[W]henever said Commission ... is ready to connect with any ... privately owned water supply or sewerage system ... and it deems it advisable and proper ... to take over the said water or sewerage system, *it may purchase the same upon such terms and conditions as may be agreed upon.* In the event of failure to agree ... the said Commission may acquire the same by condemnation...." (Emphasis added.) [*See* Anne Arundel County Code (1967), § 15-408(a); Anne Arundel County Code (1957); § 22-109.]

§ 18 provided in pertinent part:

"[W]henever ... the property owners ... of any locality ... shall desire a water supply, sewerage or drainage system ... to be constructed ... and the Commission shall decide that it is inexpedient or impracticable at that time, owing to the remoteness from its general system or other causes, to build such system, *such ... persons may build and operate said system at its own expense,* but it shall be *constructed under plans and specification prepared by the Commission and under its supervision,* and its maintenance and operation shall be under the general control of the Commission...." [*See* Anne Arundel County Code (1967), § 15-407(d) and § 15-414(a); Anne Arundel County Code (1957), § 22-110.]

enter into the 1964 Contract, it is not clear when that contract was to terminate. The rules which govern the construction of contracts between individuals and private corporations also govern the construction of contracts between individuals and municipalities. *City of Frederick v. Brosius Homes Corp.*, 247 Md. 88, 92, 230 A.2d 306, 308 (1967). Under the objective law of contracts, a court, in construing an agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time it was effectuated. *Benson v. Board of Education of Montgomery County,* 280 Md. 338, 349, 373 A.2d 926, 932 (1977); *Slice v. Carozza Properties, Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958); *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 220, 37 A.2d 305, 308 (1944). Where the language is ambiguous, the court must then determine the intent and purpose of the parties at the time the contract was made, which is a question of fact. *H & R Block, Inc. v. Garland,* 278 Md. 91, 98, 359 A.2d 130, 133 (1976); *Canaras v. Lift Truck Services, Inc.,* 272 Md. 337, 352, 322 A.2d 866, 874 (1974); *Dorsey v. Hammond,* 1 H. & J. 191, 201 (1801). It must therefore consider the circumstances and conditions affecting the parties at that time, and their subsequent conduct and construction of the contract. *Canaras,* 272 Md. at 352, 322 A.2d at 874; *National Union Mortgage Corp. v. Potomac Consol. Debenture Corp.,* 178 Md. 658, 674, 16 A.2d 866, 873 (1940); *Citizens' Fire Ins., Sec. & Land Co. of Baltimore City v. Doll,* 33 Md. 89, 107 (1872). In the absence of an express time for performance, a reasonable time will be implied. *Evergreen Amusement Corp. v. Milstead,* 206 Md. 610, 617, 112 A.2d 901, 904 (1955); *Coates v. Sangston,* 5 Md. 121, 130 (1853).

Here, the 1964 Contract does not expressly provide for a specific termination date. It does provide, however, that the water and sewerage facilities to be constructed by Crofton were to be transferred to the Commission within 66 months of the date of the 1964 Contract, or by 9 July 1969. Moreover, there were repeated references in the 1964 Contract to the fact that the agreed upon charges were applicable to connections made to "Crofton's" sewerage and water

systems, which suggests that after the facilities were transferred to the County and no longer belonged to Crofton, those charges would no longer apply. This contract language suggests that the 1964 Contract was to terminate upon the transfer of the facilities, but not later than 9 July 1969.

Other provisions of the 1964 Contract, however, indicate that it was to terminate within the time reasonably necessary for full development of the entire 1,257 acre tract. The 1964 Contract embodies a plan for the provision of the water and sewer facilities necessary to adequately service the 1,257 acre tract when fully developed.[6] Indeed, some provisions define certain of the rights and obligations of the parties as terminating, not on the date of transfer, but rather as extending throughout a period of time reasonably necessary for full development of the 1,257 acres.[7]

There was extrinsic evidence to show that the 1964 Contract was not to terminate by 9 July 1969. Witnesses for the County and the developers stated that at the time the 1964 Contract was made, the parties contemplated provision of water and sewer services sufficient to service adequately the entire 1,257 acres when fully developed. Witnesses for the developers estimated in 1964 that a reasonable time for

---

**6.** *See, e.g.,* 1964 Contract:

"WHEREAS, Crofton has had prepared plans for a water system and a sewerage system to serve the above described land [the entire 1,257 acre tract] . . . ."

**7.** *See, e.g.,* 1964 Contract:

"The Commission shall not levy any tax or assessment to pay for the facilities mentioned herein against any owner of any land shown on Exhibit A [the entire 1,257 acre tract] after the date of this Agreement, except that the Commission shall have the right to charge for water furnished said land owners after the Commission shall have acquired the ownership of the Crofton water facilities."

The fact that the Commission's obligation not to alter the contractually provided water connection charge extended to the entire 1,257 acres, shows that the Commission's obligation was not to terminate at the date on which Crofton transferred the sewer and water facilities to the County, but rather was to continue until development of the entire 1,257 acre tract had been completed. This conclusion is supported by the fact that the 1964 Contract specifically provides that the Commission's obligation to permit Crofton, and not the Commission, to charge for providing water services was to terminate when the Commission acquired ownership of the facilities. The absence of a similar, express termination provision with respect to the Commission's obligation not to alter connection charges, supports an inference that that obligation was to continue after the date of transfer.

complete development was "well within 30 years," and that 15 to 20 years was a realistic estimate. Although Crofton's request for an extension of time within which to transfer the facilities was denied, the County, in a series of letters beginning 26 February 1969, made it clear that after the 9 July 1969 transfer date, the 1964 Contract would remain in full force and effect and the contractual connection charges would continue to be applicable until the 1,257 acre tract was fully developed. Indeed, between 9 July 1969 and 15 December 1972, the County continued to charge the developers the 1964 Contract amount for sewer and water connections. All of this evidence is more than sufficient to support the trial court's finding that, at the time the 1964 Contract was made, the parties intended that it remain in effect for 20 years, a period of time reasonably necessary for full development of the 1,257 acres. That finding was not clearly erroneous. Md. Rule 886.

Having determined that the Commission had the authority to enter into the 1964 Contract establishing charges for water and sewer connections, and that the 1964 Contract had a duration of 20 years, only one question remains. That question is whether the County's subsequent enactment of statutory charges higher than those established by the 1964 Contract had any impact upon those contractual charges.

The record here shows that when the County initially established statutory charges for sewer and water connections in 1967 and when, on two subsequent occasions, it increased those charges, the statutes contained an express provision that no existing obligations or contract rights were to be impaired. Under these circumstances, the statutory charges for sewer and water connections established by the County did not apply to the developers, and, therefore, did not affect the charges established by the existing 1964 Contract. Because the County failed to make the statutory rates applicable to the developers, the 1964 Contract rates are now in effect and, in the absence of appropriate legislative modification, will continue in effect until 8 January 1984.

The trial court did not err when it concluded that the Commission had the authority to enter into the 1964 Contract.

Its finding that the 1964 Contract had a 20-year duration was supported by sufficient evidence in the record and was not clearly erroneous. Finally, the trial court did not err when it concluded that the 1964 Contract charges, and not the statutory charges, were applicable after 9 July 1969. It properly dismissed Maryland Southeastern Corporation's cross-claim against Crofton. Accordingly, we shall affirm.

*Judgment affirmed.*
*Costs to be paid by appellant Anne Arundel County.*