Mervin Y. **AUSLANDER**

v.

Abraham **HELFAND, et al.**

No. CIV. Y–97–285.

United States District Court,
D. Maryland.

Dec. 16, 1997.

John M.G. Murphy, Baltimore, MD, Terrence M. Finn, Baltimore, MD, for Plaintiff.

Marvin H. Schein, Baltimore, MD, Marvin I. Singer, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

Plaintiff Mervin Y. Auslander filed this case under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, seeking benefits from his former employer's ERISA-qualified profit-sharing plans.[1] Plaintiff was employed by Defendants Dynasurf Corporation and Relialab, Inc. from 1976 through August 12, 1993. During his employment, Plaintiff participated in his employers' ERISA-qualified profit-sharing plans. Defendants Abraham Helfand and Bobbye Thomas are trustees of the plans. Defendant Helfand is also administrator of the plans, and controls the employer-entities.

Plaintiff was accused of embezzling monies from his former employers, resulting in the termination of his employment. Defendants subsequently sued Plaintiff in the Circuit Court for Baltimore County, Maryland. Ultimately, the Baltimore County suit was settled, resulting in a dismissal with prejudice. As part of the settlement, the parties, including Plaintiff, executed a settlement agreement containing the following provisions:

> THE UNDERSIGNED DYNASURF, HELFAND, AND AUSLANDERS FURTHER STATE THAT EACH OF THEM

---

1. The parties do not dispute that the relevant plans are ERISA-qualified.

HAS CAREFULLY READ AND FULLY UNDERSTANDS THE PROVISIONS OF THIS FULL AND FINAL RELEASE AND SETTLEMENT AGREEMENT, INCLUDING THE RELEASE OF ALL CLAIMS, KNOWS THE CONTENTS THEREOF, FREELY AND VOLUNTARILY ASSENTS TO ALL THE TERMS AND CONDITIONS HEREOF, AND SIGNS THE SAME AS HIS OR HER OWN FREE ACT.

\* \* \*

Auslanders covenant that they will not sue [Defendants] with respect to any matters which were or might have been alleged in the Counter–Complaint or Third–Party Complaint filed in the [Baltimore County case], or with respect to any event, transaction or matter *that occurred before the date of this Settlement Agreement.*

(emphasis supplied)

The agreement also stated it applied to all claims "whether known, unknown, or unforeseen....arising out of any event, transaction, or matter that occurred *before the date of this Settlement Agreement* " (emphasis supplied).

Defendants contend they are entitled to summary judgment because the release unambiguously releases them from Plaintiff's ERISA claim in this litigation. Defendants urge that ERISA does not preclude a voluntary waiver of benefits, and that this suit is barred by *res judicata* because Plaintiff could have brought his ERISA claim in the prior litigation. Plaintiff argues that ERISA pre-empts Maryland state law of release, and contends that even if ERISA does not pre-empt the release provision, the parties did not intend the release to preclude an ERISA claim.

## II.

ERISA's pre-emption provision states:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a) (emphasis supplied).[2]

The Supreme Court's ERISA rulings indicate that a state law "relates to" an ERISA plan, and is therefore pre-empted by federal law, if it has a connection with, or refers to, such a plan. *California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.,* —— U.S. ——, ——, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997). In this case, Maryland's law of release does not "refer to" ERISA-qualified plans because waiver and release are principles of general applicability. *Cf. District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130–31, 113 S.Ct. 580, 583–84, 121 L.Ed.2d 513 (1992) (finding pre-emption of a District of Columbia law imposing requirements by specific reference to ERISA plans); *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (finding ERISA pre-emption of state common law cause of action based on the existence of an ERISA plan).

ERISA also pre-empts certain laws "connected with" ERISA plans. *Dillingham, supra,* at ——, 117 S.Ct. at 838. The phrase "connected with" is not to be applied with "uncritical literalism." *Id.* Rather, a reviewing court must look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive...as well as to the nature of the effect of the state law on ERISA plans." *Id.* (citing *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). ERISA pre-emption analysis does not differ significantly from traditional pre-emption analysis. *John Hancock Mut. Life Ins. Co. v. Harris Trust & Savings Bank,* 510 U.S. 86, 99, 114 S.Ct. 517, 525, 126 L.Ed.2d 524 (1993). ERISA will, therefore, only pre-empt those laws standing "as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* (citing *Silkwood v. Kerr–McGee Corp.,*

---

**2.** Section 1144(b) contains exemptions to ERISA pre-emption for, *inter alia,* state laws regulating banking, insurance, or securities, and criminal laws of general applicability. *Id.* §§ 1144(b)(2)(A) & (b)(4). The parties do not contend that these exemptions apply in this case.

·464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984)). The Court must, therefore, determine whether Maryland law constitutes an obstacle to the accomplishment of the purposes of Congress in enacting ERISA—namely, the protection of plan beneficiaries. *Boggs v. Boggs*, —— U.S. ——, ——, 117 S.Ct. 1754, 1762, 138 L.Ed.2d 45 (1997).

■ The Fourth Circuit has held that Congress, in enacting ERISA, intended to pre-empt three types of state laws: laws mandating employee benefit structures or plan administration; laws binding employers or plan administrators to particular choices or precluding uniform administrative practice; and laws providing alternate enforcement mechanisms for ERISA claims. *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir.1996). This analysis is consistent with recent Supreme Court ERISA pre-emption cases which have considered whether the states enjoy a long history of regulation in the area of the law at issue; whether the challenged law binds or dictates the choices faced by ERISA plans; evidence of congressional intent to pre-empt; whether the challenged law possesses a direct relationship to ERISA plans; and whether the existence of an ERISA plan is critical to the existence or operation of the challenged law. *See Dillingham, supra,* (finding no ERISA pre-emption of California wage law); *De Buono v. NYSA–ILA Med. & Clinical Serv. Fund, Inc.*, —— U.S. ——, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (no ERISA pre-emption of New York tax law which imposed surcharge on gross receipts of health facilities); *cf. Boggs, supra,* (finding ERISA pre-emption of Louisiana state community property law).[3]

■ Applying these principles to this case, the Court finds ERISA does not pre-empt Maryland's common law of release. Similar to the tax provisions at issue in *De Buono*, Maryland's law of release is of general applicability and has an indirect impact upon ERISA plans. Unlike the holding in *Metropolitan Life*, the indirect impact of Maryland law is not substantial because it only applies

in the relatively few instances where a waiver or release issue arises by happenstance in the context of benefits-related litigation. Maryland waiver and release law possess a more attenuated relationship to ERISA-qualified plans than the statute at issue in *Metropolitan Life* because it does not require ERISA plans to take or refrain from taking action regarding the administration of the plan. Were the Court to hold that such a highly attenuated relationship sufficed to invoke ERISA pre-emption, ERISA pre-emption would extend to innumerable state laws simply because of their coincidental presence in ERISA litigation. Every law that affects ERISA plans poses a potential obstacle to, or financial burden upon, ERISA plans. The Supreme Court's ERISA cases, however, indicate that a more substantial relationship is required to find pre-emption than the relationship present in this case.

Maryland waiver and release law does not require ERISA plans to provide certain benefits and does not concern the calculation of benefits. The existence of an ERISA plan is not essential to the creation of these affirmative defenses. The state law at issue does not directly regulate ERISA plans or their administration. Most importantly, Plaintiff has not demonstrated a congressional intent to extend ERISA's pre-emption provisions this far. The statutory language of ERISA contains no such indication. Nor do Plaintiff's proffered statements of legislative intent lend support to Plaintiff's argument. Plaintiff offers portions of ERISA's legislative history evincing an intent to prohibit so-called "bad boy" clauses, which, before ERISA's creation, operated to divest benefits of employees who were disloyal to the employer (Pl.'s Opp. at 6–7). However, Plaintiff's employers did not deprive him of his ERISA benefits because he was disloyal. Rather, the waiver and release defenses concern whether Plaintiff knowingly and voluntarily waived his ERISA benefits in connection with a settlement agreement. Simply

---

**3.** Other relevant Supreme Court cases addressing ERISA pre-emption include *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., supra* (finding no pre-emption of a law imposing hospital surcharges); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77

L.Ed.2d 490 (1983) (finding ERISA pre-emption of law which specifically referred to ERISA plans); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) (same).

stated, Plaintiff's proffered evidence does not stand for the proposition for which it is offered, and Plaintiff has not offered evidence in response to Defendants' motion demonstrating a congressional intent to pre-empt state waiver and release law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In short, the case law mandates a conclusion that Maryland's law of waiver and release is not so contrary to the protection of ERISA-plan beneficiaries as to require ERISA pre-emption. This conclusion is consistent with recent Supreme Court case law, and with the Fourth Circuit's decision in *Selman, supra,* at 1469–72 (finding that ERISA did not pre-empt Virginia malpractice action). Further, even if ERISA did pre-empt Maryland's law of waiver and release, contrary to Plaintiff's argument, ERISA's anti-alienation and anti-forfeiture provisions (29 U.S.C. §§ 1053(a) & 1056(d)) do not apply where an employee knowingly and voluntarily waives ERISA benefits by executing a written release of claims. The Federal Courts of Appeals have uniformly held that these provisions do not prevent an employee from knowingly and voluntarily waiving known ERISA benefits. *United Mine Workers v. New River Co.,* 842 F.2d 734, 737 (4th Cir.1988);[4] *Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 181 (1st Cir.1995) (citing cases); *Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580, 587 (1st Cir.1993) ("ERISA does not prohibit knowing and voluntary relinquishment of employee benefits"); *Finz v. Schlesinger,* 957 F.2d 78, 82 (2nd Cir.1992); *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 455–56 (7th Cir.1991) (holding anti-alienation provisions do not preclude waiver of benefits in settlement agreement); *Leavitt v. Northwestern Bell Tel. Co.,* 921 F.2d 160, 162 (8th Cir.1990). Accordingly, even if Plaintiff is correct in arguing that ERISA pre-empts state waiver law, ERISA does not prevent an employee from voluntarily waiving ERISA benefits, and Plaintiff has not presented evidence that his waiver was unknowing or involuntary.

The Court therefore holds that ERISA does not pre-empt state law of waiver and release, and holds that even if ERISA pre-empts Maryland waiver and release principles, the statute's anti-alienation and anti-forfeiture provisions do not prohibit knowing and voluntary waivers of employee benefits.

## III.

■ As the parties asserting the affirmative defense of release, Defendants bear the burden of proving that the elements of release are satisfied. *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1164 (4th Cir.1982). A defendant asserting an affirmative defense in a summary judgment motion must initially prove that no disputed material fact exists regarding the defense. *Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997). If the defendant meets this initial burden, the burden shifts to the plaintiff to demonstrate specific disputed material facts precluding application of the affirmative defense; if the plaintiff fails to do so, the defendant's motion must be granted. *Id.*

■ A release is the contractual abandonment of a claim or right to the person against whom the claim exists, or against whom the right could be enforced. *Whitcomb v. National Exchange Bank,* 123 Md. 612, 91 A. 689 (1914). A general release only extends to those claims within the parties' contemplation when the release is executed, and will not extend to claims which the parties did not intend to release. *Vincent v. Palmer,* 179 Md. 365, 375, 19 A.2d 183 (1941). Releases are interpreted according to established principles of contract interpretation. *Bernstein v. Kapneck,* 290 Md. 452, 459, 430 A.2d 602 (1981). The Court must, therefore, construe the release to effectuate the parties' intentions. *Panamerican Consulting Co. v. Brown,* 238 Md. 548, 550, 209 A.2d 575 (1965). If, however, the release's language is clear and unambiguous, the words of the release will be afforded their plain and ordinary meaning, and no further interpretation, in-

---

4. Plaintiff attempts to distinguish *New River* by arguing that the case concerned only health benefits. This argument lacks merit. First, ERISA covers both pension and employee welfare plans, which can include health plans. Second, the thrust of the Fourth Circuit's decision in *New River* is that § 1053(a) only precludes involuntary forfeitures of ERISA benefits. It does not, as the Fourth Circuit stated, preclude voluntary relinquishment of ERISA benefits. *Id.*

cluding parol or extrinsic evidence, is permitted. *Bernstein, supra,* at 459, 430 A.2d 602.

 Defendants cannot, under Maryland law, prevail on their release defense. First, ERISA created a fiduciary relationship between the parties because the Defendants were administrators and trustees of the plans in which Plaintiff participated (Pl.'s Opp., Exhs. C & D, at A1279 & A1310). Under the terms of the plans at issue, the administrator and trustees were fiduciaries because the plans vested these individuals with significant discretionary functions (Pl.'s Opp. Exh. B at 63–67, 79 & 82). The plans themselves state that the administrator and the trustees must act as fiduciaries in the discharge of their duties (Pl.'s Opp. Exh. B at 82–83). Accordingly, the Defendants are considered fiduciaries for ERISA purposes, *see* 29 U.S.C. § 1002(21)(A); *Custer v. Sweeney,* 89 F.3d 1156, 1161–62 (4th Cir.1996), and therefore bear the burden of proving that the release at issue was not obtained by fraud, undue influence or overreaching. *Parish v. Maryland & Va. Milk Producers Ass'n,* 250 Md. 24, 101–02, 242 A.2d 512 (1968). Defendants have not produced any evidence concerning this important requirement.

Additionally, it is unclear whether Plaintiff's ERISA claim falls within the literal language of the release provisions. These provisions unambiguously release Defendants from claims arising before the date of the settlement agreement. In this Circuit, an ERISA claim accrues when a claim for benefits has been made and formally denied. *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 72 (4th Cir.1989). Defendants have not presented facts in their motion demonstrating that Plaintiff demanded his benefits, and was formally denied them, before the effective date of the settlement. Accordingly, the Court cannot grant Defendants' motion because the Defendants have failed to meet their burden of demonstrating that Plaintiff's claim accrued before the date of the settlement agreement.

 Finally, summary judgment is not warranted because the release is ambiguous as to whether it includes "all claims" in a literal sense, or "all claims" present in the Baltimore County litigation. As stated above, where a contract's language is plain and unambiguous, no room for construction exists and the Court must assume the parties meant what they said. *General Motors Acceptance Corp. v. Daniels,* 303 Md. 254, 261, 492 A.2d 1306 (1985). When the contract is ambiguous, however, the trier of fact must determine the intent and purpose of the parties, taking into account the circumstances and conditions surrounding the subject-matter of the agreement at the time the agreement was made. *Anne Arundel County v. Crofton Corp.,* 286 Md. 666, 673, 410 A.2d 228 (1980). The test for ambiguity is whether a reasonably prudent person reading the language would find the disputed contract provision susceptible of more than one meaning. *Department of Economic & Community Devel. v. Attman/Glazer P.B. Co.,* 323 Md. 592, 605, 594 A.2d 138 (1991). In this case, a reasonably prudent person could read the settlement agreement to include all claims which relate to the Baltimore County litigation, or all claims, whether or not so related. As the trier of fact, the Court must, therefore, wait to resolve this issue at trial after receiving evidence regarding the parties' intentions in drafting the release.

### IV.

 Finally, Defendants contend that the settlement agreement and concomitant dismissal with prejudice of the Baltimore County litigation act as *res judicata,* barring Plaintiff's ERISA claim. Federal law, of course, controls the preclusive effect of the earlier judgment in this Court. *Keith v. Aldridge,* 900 F.2d 736, 739 (4th Cir.1990).

The Defendants' motion refers to the aspect of *res judicata* commonly referred to as claim preclusion, which precludes assertion of a claim after a final judgment on the merits in a prior suit by the same parties or their privies. *Meekins v. United Transp., Union,* 946 F.2d 1054, 1057 (4th Cir.1991). Because the Fourth Circuit utilizes a transactional approach to claim preclusion, claims actually litigated and those which could have been brought in the prior litigation are barred. *Id.* The existence of the claim, rather than knowledge of a claim, is determinative. *Id.* The key inquiry "is whether the new claim arises out of the same transaction or series of

transactions as the claim resolved by prior judgment." *Id.* (quoting *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986) (citing RE-STATEMENT (SECOND) OF JUDGMENTS § 24(b))).

 Consent judgments can serve as a "final judgment on the merits" for purposes of claim preclusion. *Keith, supra,* at 740. The contractual nature of a consent judgment, however, requires the Court to determine whether the parties intended the consent judgment entered on a settlement agreement to preclude a later claim: if so, the consent judgment will have preclusive effect. *Id.* at 741.

Defendants' *res judicata* defense is simply another attempt to litigate the same issue raised in its affirmative defense of release, and the former fails for the same reasons that the latter fails. First, Defendants have failed to produce evidence demonstrating that Plaintiff's ERISA claim existed when the consent judgment was entered in the Baltimore County litigation, in accordance with the principles discussed above. Further, summary judgment is inappropriate on this issue because further inquiry into the facts is necessary to resolve this issue given the ambiguous record. *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993). Even if Plaintiff's claim did exist at the time of the consent decree, it is not clear from the record and the circumstances surrounding the settlement agreement that the parties intended to preclude Plaintiff's ERISA claim. Indeed, the context of the settlement agreement suggests an intent to settle the claims regarding Plaintiff's alleged embezzlement of funds from his former employer, not an intent to settle all claims which might arise at a future time. In short, Defendants have not satisfied their burden of proving, and the available record does not indicate, that the same "operative facts" are in play in this case as in the Baltimore County litigation. *Cf. Keith, supra,* at 740 (finding preclusion of former Air Force employee's claim when prior and later claim both concerned the wrongful retention of government notes). The Court will, therefore, deny Defendants' motion for summary judgment on this defense.

Based upon the foregoing analysis, Defendants' motion for summary judgment will be denied.

## ORDER

In accordance with the attached Memorandum, it is this 16th day of December 1997, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendants' Motion for Summary Judgment BE, and the same IS, hereby DENIED; and

2. That a copy of this Memorandum and Order be mailed to counsel for the parties.