# SIMPERS *v.* CLARK
[No. 298, September Term, 1964.]

*Decided July 1, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, SYBERT and OPPENHEIMER, JJ.

*Charles C. W. Atwater* and *Thomas A. Garland,* with whom were *Mylander & Atwater* on the brief, for appellant.

*N. Paul Cronin,* with whom was *Ernest S. Cookerly* on the brief, for appellee.

SYBERT, J., delivered the opinion of the Court.

On August 21, 1963, the appellee, Bordman R. Clark, filed a bill of complaint in the Circuit Court for Kent County seeking the specific performance of an agreement which he alleged he had entered into with the appellant, Betty C. Simpers. After a hearing on the merits, Judge Rasin passed a decree ordering specific performance and Mrs. Simpers appealed.

The disputed agreement involved in this appeal grew out of an option agreement whereby Mr. Clark granted Mrs. Simpers the "exclusive right and option" to purchase all the shares of stock in the Kent Concrete Company, Inc., which he owned, as well as all of his right, title and interest in the privately owned yacht "Carolyn Jean".

The Kent Concrete Company had been formed and operated for many years by Raymond R. Clark, deceased, the father of

Bordman R. Clark. Mrs. Simpers was the second wife of Raymond R. Clark and had an infant son by him. (She remarried after his death.) Upon the death of Mr. Clark in 1956, his son, the appellee, became the president and manager of the company and owned two-thirds of its shares of stock. The other one-third was held by Mrs. Simpers and her young son. During the period of time in which the appellee managed the company the business encountered financial difficulties. On February 22, 1962, Bordman R. Clark orally agreed to purchase Mrs. Simpers' interest in the corporation. However, on or about March 10, 1962, he informed her that he could not do so because he was unable to raise the necessary funds. On the same day Mr. Clark and Mrs. Simpers, as individuals, entered into the written option agreement which is now before us. The agreement also was signed by the respective attorneys of the parties as witnesses.

After granting the option to Mrs. Simpers as mentioned above, the agreement provided:

"At And For the sum of Twenty-five Thousand ($25,000.00) Dollars subject to the following terms and conditions:

"1. The consideration for this option is the payment by said Betty C. Simpers to the said Bordman R. Clark the sum of One Hundred ($100.00) Dollars in two equal weekly instalments of Fifty Dollars each, the first on the 10th day of March, 1962, and the second on the 17th day of March, 1962.

"2. Said option shall be exercised on or before the 26th day of March, 1962, by said Betty C. Simpers by paying or securing the payment of the purchase price as follows: Cash in the sum of Five Thousand ($5,-000.00) Dollars (or, if the said Betty C. Simpers so elects, she may pay the sum of Three Thousand ($3,-000.00) Dollars and transfer to the said Bordman R. Clark unencumbranced title to the 1960 Plymouth Fury automobile of the Kent Concrete Co., Inc., which he has been using and valued by the parties at Two Thousand ($2,000.00) Dollars.)

"For the balance of the purchase price of Twenty Thousand ($20,000.00) Dollars said Betty C. Simpers shall pass to the said Bordman R. Clark her Promissory Note in usual form for the amount thereof, payable five years after date with interest thereon in the amount of six per cent per annum payable semiannually, said note to be secured by a second mortgage on the properties of Kent Concrete Co., Inc.

"3. Upon exercising of this option, the One Hundred ($100) Dollars paid as consideration therefor (Item 1 supra) shall be credited on account of the purchase price."

The Chancellor found as a fact that the agreement was prepared by Mrs. Simpers' attorney in the presence of Mr. Clark's attorney at a meeting between the parties held in the office of Mrs. Simpers' counsel on March 10. The one hundred dollars consideration for the option was paid by Mrs. Simpers as provided in the agreement.

In the period from March 10 to March 26, 1962, Mrs. Simpers attempted to obtain bank participation in a hoped for loan from the Small Business Administration in order to raise cash to operate the corporation, without success. Although considerable testimony relating to the financial condition of the corporation was admitted subject to exception, the Chancellor found such evidence to be immaterial to the case and struck it from the record. We agree with the Chancellor's action.

On March 26, 1962, the last date upon which the option could be exercised under its terms, Mrs. Simpers and Mr. Clark met in the law office of Mrs. Simpers' attorney and possibly also at sometime during the same day in the office of Mr. Clark's attorney, which was next door. During the course of the day, Mr. Clark assigned and delivered to Mrs. Simpers three stock certificates representing 106⅔ shares in Kent Concrete Company, which comprised his two-thirds of the outstanding corporate shares. Each assignment was dated March 26, 1962, and showed the assignee to be Betty C. Simpers. On the same day, Mr. Clark also executed and delivered a bill of sale transferring his one-third interest in the yacht "Carolyn Jean"

to Mrs. Simpers. She, in turn, delivered to Mr. Clark the unencumbered title to the automobile referred to in the option agreement. Earlier the same day, she had paid off an existing lien against the vehicle. Finally, Mrs. Simpers gave her personal check in the amount of $2,900.00 to Mr. Clark. There was no execution and delivery of a promissory note by Mrs. Simpers or of a second mortgage by the corporation on March 26, although the record shows that on that date the board of directors of Kent Concrete passed a resolution authorizing the second mortgage.

After the transfer of stock, Mrs. Simpers became the president of the corporation. In April, 1963, the holder of the first mortgage on the properties of the corporation instituted foreclosure proceedings. According to Mrs. Simpers, sometime after the foreclosure proceedings were filed she met Mr. Clark and he for the first time asked that the corporation execute the second mortgage. Then on or about May 3, 1963, Mrs. Simpers was asked by Mr. Clark's attorney to execute the corporate mortgage and her personal promissory note for $20,000. She refused to execute a personal note but did execute on that date a second mortgage and a promissory note, both on behalf of the corporation. After she was requested to execute the personal note at least one other time this suit was instituted by the appellee. The Chancellor found that Mrs. Simpers had exercised the option on March 26, 1962, and held that it had thus ripened into an enforceable contract. In decreeing specific performance, he ordered Mrs. Simpers to execute and deliver to Mr. Clark her personal promissory note in the amount of $20,000 according to the terms of the option agreement.

On this appeal, as below, the appellant makes two basic contentions: first, that the option was never exercised by her; and second, that even if the option agreement continued to bind her after March 26, 1962, the appellee is not entitled to specific performance because he was guilty of laches in not making a seasonable demand for the note and mortgage.

An option, as such, is not susceptible of specific performance. As this Court stated in *Trotter v. Lewis*, 185 Md. 528, 534, 45 A. 2d 329 (1946), "In any case of contract based upon an option, the remedy of specific performance is invoked not on the

theory that the option itself is enforceable, but on the theory
that the option is a continuing offer to sell and, when duly ac-
cepted by the optionee, becomes a definite contract mutually
binding and enforceable." When an option is duly exercised
it is said that the option "ripens into" a binding contract. The
appellant maintains that she did not exercise the option and
that therefore it never matured into a contract. She argues that
the option could be exercised only by the performance of three
actions on or before March 26, 1962, namely: (1) the payment
of $5,000 or its equivalent; (2) the execution of a note in the
amount of $20,000; and (3) the execution of a second mortgage
by the corporation as security for the note. Since it is conceded
that the last two actions were not performed on or before March
26, if Mrs. Simpers' interpretation of the option agreement is
correct, then the option was not exercised since it is well settled
that the exercise, as in the case of all offers, must be uncondi-
tional and in accordance with the terms of the option. *Foard v.
Snider,* 205 Md. 435, 446, 109 A. 2d 101 (1954). However,
before we discuss the merits of this argument we note that the
appellant's contention goes beyond a claim that there was no
exercise: it is also claimed that the reason there was no exer-
cise was that the parties entered into a new arrangement,
amounting to a novation, on March 26, 1962, by orally agree-
ing that the option would not be exercised unless Mrs. Simpers
could obtain financing to carry on the business of the corpora-
tion. Since she was unable to do so, she says, the option never
became a contract.

In regard to whether or not the parties attempted orally on
March 26 to modify the written option agreement of March 10,
the testimony is extremely unclear and inconclusive. We think
it unnecessary to outline the variations in the details of the tes-
timony as they developed on direct and cross examination. Suf-
fice it to state that there was no clear evidence before the Chan-
cellor to require a finding of such a modification and therefore
he was not clearly wrong in deciding that there had been none.

This brings us to the basic question of whether the Chan-
cellor was correct in finding that there was an exercise of the
option under the terms of the agreement. We believe, as did the
Chancellor, that Mrs. Simpers' actions manifested her inten-

tion to do so. If she did not believe she was exercising the option on March 26, it is extremely difficult to understand why she paid to Mr. Clark the $2,900 (taking credit for the $100 paid as consideration for the option, which was to be credited against the purchase price *if the option was exercised*), transferred the unencumbered title to the automobile, and accepted the bill of sale for the yacht and the assignment and delivery of the stock certificates from Mr. Clark. And then, approximately a year later, she executed the second mortgage on behalf of the corporation, and although she refused to give her personal note, she did execute a corporate note. These actions show clearly that Mrs. Simpers thought she had exercised the option. Furthermore, the fact that she executed the mortgage although the corporation had not obtained refinancing supplies the final *coup de grace* to her contention that there was a modification of the March 10, 1962 agreement under which she was not to exercise the option unless refinancing of the corporation was accomplished. The Chancellor properly found, we think, that Mr. Clark had performed every act he was required to perform under the agreement, and that if he did not insist upon immediate execution of Mrs. Simpers' personal note and the corporate mortgage, it was for her benefit and did not amount to a new agreement making exercise of the option by her contingent upon refinancing of the corporation.

It also was argued that under the terms of the option agreement the note was to be a corporate note and not Mrs. Simpers' personal note. Without laboring the point, we think the agreement is unequivocal on this issue. It clearly states that she should pass to Mr. Clark "her" promissory note for the $20,000; and in the light of the fact that the yacht and stock were transferred to her personally we believe the Chancellor was correct in finding it was contemplated that she give her personal note. On the record presented, we are unable to hold that the Chancellor was clearly wrong when he found that the appellant exercised the option on March 26, 1962, in accordance with its terms.

Therefore, unless the appellee was guilty of laches in not making a seasonable demand for the note and mortgage, Judge Rasin properly decreed specific performance. It is undisputed

that there was no mention of the note or mortgage until approximately a year after the March 26, 1962, meeting. It is well established that ordinarily mere lapse of time, short of the analogous period of limitations at law, in the assertion of a right is not sufficient to constitute laches, *Stevens v. Bennett,* 234 Md. 348, 351, 199 A. 2d 221 (1964) ; *Rettaliata v. Sullivan,* 208 Md. 617, 622, 119 A. 2d 420 (1956) ; in such circumstances, for the doctrine to be applicable, there must be a showing that the delay worked a disadvantage to another. *Bradford v. Futrell,* 225 Md. 512, 525, 171 A. 2d 493 (1961) ; *Bradley v. Cornwall,* 203 Md. 28, 39-40, 98 A. 2d 280 (1953).

To support her contention that Mr. Clark was guilty of laches, Mrs. Simpers contends that the record of the foreclosure proceedings in regard to the first mortgage of Kent Concrete "indicates" that if the second mortgage had been requested to be executed, and actually executed and recorded, prior to the foreclosure proceedings there would have been sufficient funds therein to pay the second mortgage. Although the record in the foreclosure case is not before us, it was stipulated below that the foreclosure sale produced $40,000, that the first mortgage was for less than $19,000, and that all claims (excluding the second mortgage) against the surplus totaled approximately $38,000. The appellant contends that if the second mortgage had been "promptly" executed and recorded the creditors would have been junior to the second mortgage. She therefore argues that the prejudice to her "is found in her inability to have Clark's debt paid out of corporate assets."

The Chancellor found that Mr. Clark was not guilty of laches and that the fact that the affairs of Kent Concrete did not prosper was irrelevant. We agree. The assertions in regard to the payment of Mr. Clark's debt out of corporate assets are too speculative to support a claim of prejudice. There was no proof as to the nature and dates of the other creditors' claims (*i.e.,* whether they did or did not consist of judgments or other liens which antedated and would have had priority over a second mortgage). In any event, under the terms of the agreement Mrs. Simpers was to give her personal promissory note. Thus she would be personally liable to Mr. Clark on the note if it had been executed before the corporation failed and she would be

404

similarly liable if the note were executed after the corporation failed. And even if Mr. Clark had been able to collect from the corporation under the second mortgage, as Mrs. Simpers claims he should have, she would still have been liable to other shareholders (such as her minor son) or the creditors of the corporation, since the second mortgage of the corporation was executed to secure the personal debt of Mrs. Simpers. *Bear Creek Lumber Co. v. Bank,* 120 Md. 566, 87 Atl. 1084 (1913) ; *Bortner v. Leib,* 146 Md. 530, 126 Atl. 890 (1924) ; *Hess v. Cedarhome Lumber Co.,* 245 Pac. 753, 47 A.L.R. 71 (Wash. 1926).

However, even if we were to assume that Mr. Clark was guilty of laches, it would appear that Mrs. Simpers by executing the corporate mortgage and note upon request in May 1963 waived her right to assert the defense. *Foard v. Snider, supra* (at p. 447 of 205 Md.). The fact that she did execute the two instruments in corporate form and only complained when requested to execute her personal note would seem to indicate that she was merely dissatisfied with the terms of the option agreement. However, mere dissatisfaction with the terms of a contract duly entered into will not bar a suit for specific performance. Cf. *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272 (1952), and cases cited.

For the reasons stated, we hold that the Chancellor properly decreed specific performance in this case.

*Decree affirmed, with costs.*