## YORKRIDGE SERVICE CORPORATION *v.* WELDON LEE BORING ET UX.

[No. 366, September Term, 1977.]

*Decided February 9, 1978.*

The cause was argued before THOMPSON, DAVIDSON and MASON, JJ.

*Gary I. Strausberg,* with whom were Melnicove, Kaufman & Weiner on the brief, for appellant.

*Michael J. Travieso,* with whom were *John J. Kenny* and *Ellen Lipton Hollander* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Yorkridge Service Corporation (Yorkridge), the appellant, sought to enforce a first refusal option against Weldon Lee Boring and Gwendolyn Richards Boring, his wife, (the Borings), the appellees, in the Circuit Court for Howard County, Judge Guy Cicone presiding. The chancellor granted the Borings' motion for summary judgment and denied

Yorkridge the relief sought. The case turns upon the question of whether or not Yorkridge properly exercised its option.

The record shows that by agreement dated May 26, 1975, and executed June 2, 1975, the Borings granted Yorkridge a first refusal option to purchase a tract of land known as Section III of Gwenlee Estates. The pertinent portion of the option provided:

> "If anytime during the term of this First Refusal Option we shall receive a bonafide offer to purchase the Section III Land or any part thereof ('other offer'), we shall forthwith forward to you a copy of such 'other offer' containing all of the terms and conditions of purchase. If within 7 days from the date of your receipt of such 'other offer', you give us written notice of your intention to purchase that portion of Section III Land covered by such 'other offer' upon the same terms and conditions contained in such 'other offer' then such 'other offer' together with your written notice of intention to purchase shall serve as a binding agreement between us, subject to such changes and modifications that may be mutually agreed upon."

On January 4, 1976, the Borings received an offer to purchase Lots 1 to 28 of Section III from Development Technology, Inc. for the sum of $224,000. Yorkridge received notice of this offer from the Borings on or about January 17, 1976 but requested and received an extension of time to exercise its option until its counsel, who was abroad, returned to the United States. Upon his return, Yorkridge's counsel, Isaac M. Neuberger, sent a letter to the appellees on January 29, 1976, which in pertinent part stated:

> "In accordance with our brief telephone conversation, I am enclosing herewith an Amendment to Agreement of Sale to the Development Technology, Inc. Contract of Sale which I prepared in accordance with the terms of the First Refusal Option dated May 25, 1975. I have reduced the purchase price by the brokerage

commission, since this is a savings as a result of our having exercised our option."

"The Amendment to Agreement of Sale" enclosed was an unexecuted document which purported to reduce the purchase price by $11,200, the amount equal to the savings the Borings would realize on the real estate brokerage commission by virtue of the sale to Yorkridge rather than to Development Technology, Inc., leaving a total purchase price of $212,800.

The law as to what constitutes a proper acceptance of an option insofar as here relevant was succinctly set out in 1 *Willison on Contracts,* § 79 (3rd ed. 1957) at 261-62:

> "Frequently an offeree, while making a positive acceptance of the offer, also makes a request or suggestion that some addition or modification be made. So long as it is clear that the meaning of the acceptance is positively and unequivocably to accept the offer whether such request is granted or not, a contract is formed. So an inquiry as to the meaning of an offer, or a request for an explanation, will not invalidate a positive acceptance; nor will a request for a modification of the offer coupled with an unqualified acceptance not dependent on the granting of the request." (footnotes omitted)

We entirely agree with the holding of the trial judge that Yorkridge's letter of January 29, 1976, constituted a counter-offer rather than an acceptance. In arguing to the contrary, Yorkridge cites that portion of the language in the option which states that the written notice of intention to purchase will serve as a binding agreement "subject to such changes and modifications that may be mutually agreed upon." It argues that by including that language in the agreement, proposals for amendments were invited and that its letter was simply following the terms of the agreement. We think the argument begs the question. Any agreement is subject to such changes and modifications to which the parties may mutually agree. It assumes that the option had first been accepted and we see no language in the letter by

which it is stated unequivocally that the option had been accepted. To overcome this hurdle Yorkridge points to the language in the latter part of the quoted portion of its letter of January 29, "as a result of our having exercised our option." Once again, the problem we have with the argument is that it assumes the option had been previously exercised when a simple reading of what preceded the language fails to disclose any words which indicate that the option was accepted. In our view, the language quoted must refer to the conditional acceptance because there had been no real acceptance. In closing his letter to the Borings, counsel for Yorkridge stated: "John Davis [vice president of Yorkridge] has not reviewed this first amendment; however, I doubt that he will have any substantive comments." This language indicates the letter was not designed to be a formal acceptance. In addition, the amendment to the agreement of sale provided: "The buyer has agreed to purchase the land subject to the terms and conditions of the contract of sale, *except as amended herein.*" As the trial judge noted, "It is difficult to construe such provisions as meaning anything other than the plaintiff intended to make its acceptance conditional upon agreement to the amendments."

Yorkridge relies on five cases to support its argument. In *Katz v. Pratt Street Realty Co.,* 257 Md. 103, 262 A. 2d 540 (1970), the Katzes were given three options, only one of which could be exercised. The Katzes accepted one of the options but in their acceptance stated that within the time limits they might in the future exercise other options. The Court held that the additional language did not qualify their original acceptance of option no. 1 even though the subsequent attempt to exercise other options was not effective. The Court stated:

> "It is well settled that to be valid, the exercise of an option must be unequivocal and in accordance with the terms of the option, *Simpers v. Clark,* 239 Md. 395, 401, 211 A. 2d 753 (1965); *Foard v. Snider,* 205 Md. 435, 446, 109 A. 2d 101 (1954); Restatement, *Contracts* § 58 (1932) at 65; § 59 at 65-66. However, '* * * a proper notice of acceptance is not made

inoperative by the fact that it is accompanied by a proposal for some substitute arrangement subject to the other party's consent* * *.' 1 A. *Corbin on Contracts* § 264 (1963) at 523-24." 257 Md. at 118.

In that case the first paragraph of the letter of acceptance stated clearly and unequivocally that the Katzes exercised their option to purchase one of the properties for the sum of $35,000. We have no such language in the purported acceptance in the instant case.

In *Moss v. Cogle,* 267 Ala. 208, 101 So. 2d 314 (1958), the acceptance stated: "I have decided to exercise the option which you gave me. . . ." The acceptance then went on to state that timber had been cut on the land and they would like a statement of the amount that had been cut. Once again the acceptance began with an unequivocal acceptance of the option and the language which followed was merely a request and in no way modified the original acceptance. Likewise, in *Lawton v. Byck,* 217 Ga. 676, 124 S.E.2d 369 (1962), *Lambert v. Taylor Telephone Co-Operative, Inc.,* 276 S.W.2d 929 (Tex. Civ. App. 1955), and *Duprey v. Donahoe,* 52 Wash. 2d 129, 323 P. 2d 903 (1958), each of the acceptances contains unequivocal language accepting the offer.

As the language of the written documents clearly shows the option was not exercised, there is no need for us to consider subsequent correspondence or subsequent acts of the parties. *Benson v. Board of Education,* 280 Md. 338, 373 A. 2d 926 (1977); *Della Ratta, Inc. v. American Better Community Developers, Inc.,* 38 Md. App. 119, 380 A. 2d 627 (1977). We have, however, reviewed the letters and the affidavits and the result would not have changed if we needed to resort to secondary evidence. The letters are not sufficient to show that the January 29 letter constituted an exercise of the option. The letters sent to the Borings are merely continued negotiations looking towards the sale of the property and do not indicate a binding contract had been formed. Similarly, the letter from counsel for Development Technology, Inc. is too equivocal to be of any assistance to Yorkridge. In that letter Mr. Talkin stated: *"It is my*

*understanding* that this matter was not finalized because Yorkridge decided to exercise its option.''

Absent any dispute as to *material* facts, the trial judge properly granted summary judgment.

*Decree affirmed.*
*Appellant to pay the costs.*