914 A.2d 136

DAVID A. BRAMBLE, INC.

v.

Merrill F. THOMAS, et ux.

No. 32, Sept. Term, 2006.

Court of Appeals of Maryland.

Jan. 8, 2007.

R. Stewart Barroll (Cookerly & Barroll, LLC, Chestertown, on brief), for petitioner.

Stephen H. Kehoe (Ewing, Dietz, Fountain & Kehoe, P.A., Easton, on brief), for respondents.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

HARRELL, J.

The sole issue in this case concerns the propriety of the Court of Special Appeals's affirmance of summary judgment in favor of third-party purchasers of certain real property and against the holder of a preemptive right of first refusal as to the property. David A. Bramble, Inc. ("Petitioner" or "Bramble"), the holder of the right of first refusal, attempted to exercise its preemptive right, but omitted in the purported exercise a non-price term contained in the third-parties' triggering offer. The Circuit Court for Caroline County, in granting summary judgment to the third parties, declared that Bramble had not exercised effectively its right of first refusal. The Court of Special Appeals affirmed. For reasons we shall explain, we conclude that there was generated a genuine dispute as to a material fact whether the non-price term was added to the triggering offer in bad faith. Therefore, we shall reverse.

## I. FACTUAL BACKGROUND

With the notable exception identified *supra,* the facts, material and otherwise, of this case were otherwise largely undisputed. John O. Lane and Rose T. Lane ("Lanes"), husband and wife, own a 25.99 acre parcel of unimproved real property located on Cherry Lane near Ridgely in Caroline County, Maryland (the "Property"). On 3 January 2004, Respondents here, Merrill F. Thomas and Nancy R. Thomas ("Thomases"), entered into an Unimproved Land Contract of Sale ("Thomas Offer") whereby the Lanes agreed to sell to the Thomases the Property for a purchase price of $105,000.00. Respondents tendered with the contract a $1,000.00 earnest money deposit. Closing was to occur on or before 16 February 2004. The Thomas Offer contained a hand-written Addendum which provided the following:

1. Nancy Thomas is a licensed Real Estate Agent in the State of Maryland.

2. This contract is contingent upon the release of David Bramble's first right of refusal within 30 days of ratification.

3. Buyers agree that they will not mine the above referenced property.

The "right of first refusal" to which Paragraph 2 of the Addendum referred was originally granted by the Lanes to RWL Development Company ("RWL") on 20 February 1992,[1] and provided, in pertinent part:

In the event John Owens Lane and Rose T. Lane, his wife, shall receive an offer to purchase their property located in the Second Election District of Caroline County, Maryland, described in a deed from RWL Development Company, a Maryland Corporation, to John Owens Lane and Rose T. Lane, his wife, dated November 20, 1991, recorded in Liber 247, Folio 375, a Land Record Book for Caroline County, Maryland, and decide to accept the same,

---

1. The Right of First Refusal was recorded among the Land Records of Caroline County in Liber No. 249, Folio 397.

they shall first offer the property to RWL Development Company, its successors and/or assigns, *for the price and on the terms of the intended sale.*

RWL Development Company, its successors and/or assigns, shall have thirty (30) days from the date of such offer in which to accept or reject the same. Nothing hereinbefore contained shall in any way delay or limit the right of any mortgagee to foreclose under a valid mortgage or deed of trust, in accordance with the terms of such instrument, or to accept a deed in lieu of foreclosure from the grantors.[2]

(emphasis added). On 7 May 1993, RWL Development Company conveyed by Deed[3] to Petitioner[4] its right of first refusal.

Counsel for the Lanes wrote a letter to Bramble on 6 January 2004 notifying it that the Lanes had accepted the Thomas Offer, contingent upon Bramble's release of its right of first refusal. Attached to the letter was a copy of the Thomas Offer, with the "no mining" clause. Bramble executed and delivered to the Lanes on 19 January 2004 an "Agreement of Sale," which purported to exercise its right of first

---

**2.** According to a letter in this record, written by counsel for the Lanes and dated 6 January 2004, Petitioner owns RWL Development Company.

**3.** This Deed was recorded on 11 May 1993 among the Land Records of Caroline County, Maryland, at Liber 252, Folio 712.

**4.** David A. Bramble, Inc., is a corporation organized under the laws of the State of Maryland with its principal place of business in Caroline County. Petitioner mines sand and gravel from a site located adjacent to the Property.

RWL conveyed to Bramble the right of first refusal as part of a larger land sale, whereby Bramble received, in exchange for $445,000.00 and other valuable consideration, three parcels of land located on or around Cherry Lane in Ridgely, Maryland. One parcel is adjacent to the Property, and the other two are located across Cherry Lane from the Property. According to the land sale contract, dated 8 March 1993, there is a sand pit located on one of the tracts. This is the land from which Petitioner mines sand and gravel. It is unclear from the record whether Petitioner extracted natural resources from the pit before 7 May 1993. In any event, Bramble had been mining the pit since that date.

refusal ("Bramble Offer").[5] Petitioner's offer matched all the terms of the Thomas Offer, except that it omitted the prohibition against mining included in Paragraph 3 of the Thomas Offer's Addendum.

Respondents agreed on 4 February 2004 to amend certain terms in the Thomas Offer, increasing the purchase price to $120,000.00, with settlement to occur on 31 March 2004. The following day, counsel for Respondents faxed to the Lanes a revised offer ("Second Thomas Offer"), which reflected the amended price and settlement terms. By letter dated 6 February 2004, the Lanes' attorney informed Petitioner of the new offer and requested advice as to whether Bramble would be willing to meet the increased sale price of $120,000.00.

On 17 February 2004, counsel for Petitioner responded that, because Bramble previously had exercised its preemptive right, a binding land sale contract had been formed. According to counsel, "the Thomases [were] not at liberty to make additional offers nor [were] the Lanes at liberty to accept them" in connection with the sale of the Property. The next day, counsel for the Lanes advised Bramble that it was the Lanes' view that the offer tendered by Petitioner was not an effective exercise of its right of first refusal. Specifically, counsel informed Bramble that if it wished to exercise its preemptive right, "[it] must do so by accepting all the terms of the offer, including the restriction that the property would not be mined." Because the Bramble Offer, as signed and delivered, did not mirror exactly the terms of the Thomas Offer ratified by Respondents, it was neither an effective exercise of the right of first refusal, nor a valid acceptance. According to the Lanes, the Bramble Offer was instead a counter-offer which the Lanes were free to accept or reject.

---

5. A clause inserted by Bramble into the Agreement read:
 WHEREAS, an offer, to purchase the land described in the aforesaid right of first refusal has been accepted by John Owens Lane and Rose T. Lane, on [3 January 2004]. It is the intent of this Agreement being submitted by David A. Bramble, Inc., to exercise the right of first refusal, to purchase the property for the price set forth in the order heretofore accepted by John Owens Lane and Rose. T Lane, his wife.

Bramble agreed to revise his offer to include a prohibition against mining, and submitted a new offer ("Second Bramble Offer") which purported to be a valid exercise of its preemptive right. Although the Second Bramble Offer included the "no mining" provision, it contained the original sales price of $105,000.00. In other words, the Second Bramble Offer mirrored the provisions of the initial triggering Thomas Offer. The Second Bramble Offer was tendered on 19 February 2004, forty-four days after Bramble was first notified of the Lanes' acceptance of the Thomas Offer.

Citing the controversy concerning the validity of Bramble's exercise of its right of first refusal, and because of the fear of being sued by Bramble, the Lanes refused to convey the property to either suitor. Mr. Lane, on 7 March 2004, attempted instead to return the $1,000.00 earnest money tendered by the Thomases with the Thomas Offer. Respondents answered by filing suit against both the Lanes and Petitioner in the Circuit Court for Caroline County in order to determine and enforce their asserted rights with respect to the Property.

Respondents sought in Count I a declaratory judgment that the right of first refusal was void because it violated the Rule against Perpetuities. Specifically, Respondents argued, under *Ferrero Construction Co. v. Dennis Rourke Corp.*, 311 Md. 560, 575–76, 536 A.2d 1137, 1144–45 (1988), that because Bramble was a corporation with a theoretically perpetual existence, the right of first refusal might vest well beyond some life in being plus twenty one years. In Count II, Respondents sought specific performance of the Second Thomas Offer. The Thomases requested further, in Count III, damages in the amount of $25,000.00, for the anticipatory breach that occurred when the Lanes refused t o convey the property.

The Lanes moved for summary judgment. Respondents answered and filed their own motion for summary judgment. Neither the Lanes nor Petitioner filed a response to Respondents' motion for summary judgment. The parties appeared for oral argument on the motions, represented by counsel.

The Circuit Court filed its written opinion on the motions on 23 February 2005. The trial judge declared first that the right of first refusal did not violate the rule against perpetuities:

> The right of first refusal granted to David A. Bramble does not violate the Rule Against Perpetuities. In the original conveyance of the right to RWL Corporation, the Right was stated to be applicable "[i]n the event John Owens and Rose T. Lane, his wife, shall receive an offer to purchase their property." The right thus would vest, if at all, within a life or lives in being, i.e., when the last of the two Lanes die. *Cf. Park Station Ltd. Partnership LLLP v. Bosse,* 378 Md. 122, 135, 835 A.2d 646 (2003).[6]

---

**6.** As stated earlier, Respondents initially argued that the right of first refusal was void under *Ferrero Construction Co. v. Dennis Rourke Corp.,* 311 Md. 560, 536 A.2d 1137 (1988). In *Ferrero Constr. Co.,* this Court held that the "preemptioner" (the holder of a right of first refusal) holds an equitable interest in the subject property which vests only when the property owner decides to sell. We concluded that a right of first refusal conveyed between two corporations violated the rule against perpetuities. Because both corporations had theoretically an infinite existence, we reasoned that the holder's "right of first refusal was not limited to a term of years but was of unlimited duration." Thus, the right could vest beyond "a life in being plus twenty-one years," as contemplated by the Rule Against Perpetuities. *Ferrero Constr. Co.,* 311 Md. at 575–76 n. 7, 536 A.2d at 1144 n. 7 (holding that corporations may not be used as measuring lives for the purposes of the Rule Against Perpetuities).

In *Park Station Ltd. Partnership, LLLP v. Bosse,* 378 Md. 122, 835 A.2d 646 (2003), however, this Court was called upon to decide whether a right of first refusal violated the Rule when conveyed by an individual property owner to a limited partnership (with potentially unlimited duration). We held that because the right of first refusal, as drafted, did not continue in the property owner's successors or assigns, this right could not vest beyond the deaths of the property owners. *Park Station,* 378 Md. at 135–36, 835 A.2d at 654. The property owner, in other words, would receive, if at all, an offer to purchase the encumbered property on or before their death, thereby vesting in the preemptioner the opportunity to exercise its right of first refusal within the statutory period.

In the present case, the Circuit Court determined that the right of first refusal granted by the Lanes, as drafted, pertained only to offers received by the Lanes themselves, and did not contemplate offers received by the Lanes' heir or assigns. Thus, the right of first refusal would vest on or before the death of the Lanes, a life in being at the

The trial court continued, however, that the purported exercise of the right of first refusal was ineffectual:

Although it does not violate the Rule Against Perpetuities, Bramble's right of first refusal is void for the following reasons. Bramble had the option to accept the terms of any other offer to buy the property and thereby purchase it himself within thirty days of the offer of another. When Bramble learned of a contract between the Lanes and the Thomases, he submitted a proposed contract to the Lanes that had different terms than the contract between the Thomases and Lanes. Specifically, the contract between the Lanes and Thomases stated that the "[b]uyers agree that they will not mine the above referenced property." Bramble's first proposed contract to the Lanes lacked this provision. An acceptance with terms that vary from those in an offer constitutes a rejection and counter-offer. *Post v. Gillespie*, 219 Md. 378, 149 A.2d 391 (1959).

The court, thus, granted summary judgment on Respondents' Count I claim. It denied summary judgment as to Counts II and III of the complaints, however, because there were "disputes as to material facts." The Circuit Court denied the Lanes' motion for summary judgment.

On 24 March 2005, the Lanes and Respondents reached a settlement agreement as to all unresolved claims in the action. Respondents filed on 25 April 2005 a motion for voluntary dismissal as to Counts II and III, pursuant to Maryland Rule 2–506(b), which the Circuit Court granted with prejudice two days later. Bramble noted a timely appeal to the Court of Special Appeals.

Bramble argued exclusively on appeal that the Circuit Court erred in declaring that the corporation had not exercised effectively its right of first refusal when it failed to include the "no mining" clause in the Bramble Offer. The Court of

time of the right's creation. Respondents do not challenge here, by cross-appeal, the Circuit Court's conclusion that the preemptive right does not violate the Rule Against Perpetuities. Thus, we do not consider this issue.

Special Appeals, in an unreported opinion, affirmed the judgment of the Circuit Court. The intermediate appellate court reasoned that, because the "no mining" provision was a material term in the triggering offer, Petitioner's "matching" offer, which omitted the use restriction, was an ineffective exercise of the corporation's right of first refusal. Even in the absence of language indicating that the Bramble Offer was a conditional exercise of Petitioner's right of refusal, according to the court, the absence of the "no mining" clause rendered Bramble's alleged exercise insufficient because Bramble, in effect, was attempting to purchase, at the same price, more rights in the property than contained in the triggering offer. On Bramble's petition, we issued a writ of certiorari. 393 Md. 244, 900 A.2d 751 (2006).[7]

## II. STANDARD OF REVIEW

Summary judgment is proper when "the motion [for summary judgment] and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(f). Because a trial court decides only questions of law when considering a motion for summary judgment under Rule 2–501(f), this Court reviews a grant of summary judgment *de novo* in order to determine whether the trial court was legally correct. *Walk v. Hartford Cas.*, 382 Md. 1, 14, 852 A.2d 98, 105 (2004); *Todd v. Mass Transit Admin.*, 373 Md. 149, 154, 816 A.2d 930, 933 (2003); *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 533, 836 A.2d 655, 669 (2003); *Southland Corp. v. Griffith*, 332 Md. 704, 712, 633 A.2d 84, 87–88 (1993). In doing so, we review independently the factual record in a light most favorable to

---

7. The question presented in Bramble's petition was:

When the holder of a right of first refusal on real property attempted to exercise its right to purchase but omitted a non-price term contained in the triggering offer, should the Court of Special Appeals have affirmed a summary judgment, that as a matter of law the attempted exercise failed when there was no evidence that the omitted term was material to the sellers?

the non-moving party and construe in favor of the non-moving party any reasonable inferences which may be drawn from the pleadings, admissions, and affidavits. *Jurgensen v. New Phoenix Atl. Condo. Council of Unit Owners*, 380 Md. 106, 114, 843 A.2d 865, 869 (2004).

## III. DISCUSSION

Respondents maintain [8] that

[t]he trial court properly determined that the failure of Bramble to submit a timely offer that included a prohibition against mining constituted a counter offer. A reply to an offer that differs from the suggested method of performance is a conditional acceptance or counter offer. *Baltimore County v. Archway Motors*, 35 Md.App. 158, 163, 370 A.2d 113 (1977). Bramble's deviation from the terms of the Thomas Offer was not an unqualified acceptance of this offer "for the price and on the terms of the intended sale." As such, it did not comply and the trial court was correct in determining that it had not properly exercised its right of first refusal in a timely manner.

Respondents argue further that, because the prohibition against mining was a material term of the Thomas Offer, its exclusion from the Bramble Offer improperly would have entitled Bramble to more rights in the subject property than granted by the triggering offer.[9] Petitioner counters that even if Maryland law requires exact matching of the terms of the triggering offer when exercising a right of first refusal, neither the property owner nor the proposed third-party purchaser may act in bad faith to discourage or frustrate the

---

8. Respondents made the same argument in the Court of Special Appeals.

9. The basis for this argument is that the Property would be more profitable, and thus more valuable, if mining of the land were permitted. Because the triggering offer contained a use restriction prohibiting mining on the Property, and Petitioner attempted to eliminate the use restriction while maintaining the same purchase price found in the triggering offer, it was receiving, in effect, at the same price significantly more valuable property rights.

exercise of the preemptive right, or include terms which they know the preemptive rightholder will not accept.

## A. Options to Purchase and Rights of First Refusal Generally.

 In order to consider properly whether Petitioner's omission of the no-mining clause rendered ineffective the exercise of its preemptive right, it is necessary first to refresh our recollection of the conceptual underpinnings of option contracts and rights of first refusal. An option is a "continuing offer to sell during the duration [of the option agreement] which on being exercised by the optionee becomes a binding and enforceable contract." *Straley v. Osborne*, 262 Md. 514, 521, 278 A.2d 64, 68 (1971) (quoting *Diggs v. Siomporas*, 248 Md. 677, 681, 237 A.2d 725, 727 (1968)). It is well settled-law in Maryland that to be an effective exercise of an option, the exercise of that option "must be unequivocal and in accordance with the terms of the option." *Katz v. Pratt St. Realty Co.*, 257 Md. 103, 118, 262 A.2d 540, 547 (1970) (citing *Simpers v. Clark*, 239 Md. 395, 401, 211 A.2d 753 (1965)); *Foard v. Snider*, 205 Md. 435, 446, 109 A.2d 101, 105–06 (1954) ("Whatever the option requires must be done. As in the case of all offers, revocable or irrevocable, the exercise must be unconditional and in *exact accord* with the terms of the option.") (emphasis added); 1 WILLISTON ON CONTRACTS § 5:18 (4th ed. 1990) ("When the optionee decides to exercise [its] option, [it] must act unconditionally and according to the terms of the option."); *see also Post v. Gillespie*, 219 Md. 378, 385–86, 149 A.2d 391, 395–96 (1959). Indeed, Maryland applies generally this objective rule of offer and acceptance to the formation of any contract underlying the alienation of real property. *See Peoples Drug Stores v. Fenton Realty Corp.*, 191 Md. 489, 494, 62 A.2d 273, 276 (1948) ("To constitute a valid contract, the offer of one party must be certain and definite, and the acceptance of the other party must correspond with the offer in its entirety. A contract, to be final, must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement.").

A right of first refusal, or "preemptive right," is a type of option, *Ferrero Construction Co.*, 311 Md. at 567, 536 A.2d at 1140. The purposes for which rights of first refusal are utilized are "closely related to the purposes of [traditional] option contracts." 3 CORBIN ON CONTRACTS § 11.3 (rev. ed.1996). The two types of agreements are dissimilar, however, in terms of the legal relationships of the parties who enter them. *Id.* A right of first refusal is an agreement between the property owner ("grantor") and a holder ("preemptioner") whereby the receipt of an offer from a third-party purchaser to buy the subject property "triggers" the right of first refusal which, in turn, "ripens" into an option to buy on part of the preemptioner. *Id.; see also Straley*, 262 Md. at 521–22, 278 A.2d at 68–69 (referring to a preemptive right as a "conditional option, or first privilege of purchase"); *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 449–50, 171 A.2d 736 (1961); *Iglehart v. Jenifer*, 35 Md.App. 450, 451 n. 1, 371 A.2d 453 (1977) (differentiating between the legal effect of a traditional option and an option of first refusal). In sum,

[preemptive] rights of the [holder] are contingent upon the desire of the owner to sell. [Unlike a true option] the [holder of a right of first refusal] has no unqualified power to compel a sale to him or to a third person.... *These provisions are, consequently, analogous to options upon a condition precedent, and subject to many of the same rules* [as an option agreement].

RESTATEMENT OF PROPERTY § 413, cmt. b (1944) (emphasis added) (internal cross-references omitted); *see Straley*, 262 Md. at 521–22, 278 A.2d 64 at 68–69. Thus, despite the differences in the legal effects of the two types of agreements, the rules relating to options are applicable, for the most part, to rights of first refusal.

### B. Materiality of an Omitted Provision.

Respondents ask this Court to apply the objective theory of contracts followed generally in Maryland, i.e., that in order to exercise effectively the right of first refusal, Bramble's exercise must have been unequivocal and in accordance with the

exact terms of the triggering offer. *Katz,* 257 Md. at 118, 262 A.2d at 547; *Foard,* 205 Md. at 446, 109 A.2d at 105–06. There is some social and legal utility in applying, to the purported exercise of a pre-emptive right, the requirement that the rightholder duplicate exactly the terms of the triggering offer because it tends to avoid a situation where the preemptioner otherwise may impede the alienability of real property. As the U.S. Court of Appeals for the Seventh Circuit stated, the holder of a preemptive right should not be enabled to justify its failure to match a term in the third-party's triggering offer on the ground that the omitted non-price term is immaterial:

> [w]ithout [an exact matching requirement], the right [of first refusal] is an impediment to the marketability of property, because it gives the holder of the right a practical power to impede a sale to a third party by refusing to match the third party's offer exactly and then arguing that the discrepancy was immaterial.

*Miller v. LeSea Broadcasting,* 87 F.3d 224, 226 (7th Cir.1996). Other courts likewise have extended to the exercise of a preemptive right the mirror image rule employed in determining whether an option was exercised effectively. *West Texas Transmission, L.P., v. Enron Corp.,* 907 F.2d 1554, 1565 (5th Cir.1990) ("Whether or not a particular contract term is material is not the standard by which we judge whether an acceptance which rejects that term is a valid exercise of the right of first refusal. Like the acceptance of any other offer, the exercise of an option, must be unqualified, absolute, unconditional, unequivocal, unambiguous, positive, without reservation and according to the terms or conditions of the option.") (citations omitted); [10] *Weber Meadow–View Corp. v. Wilde,* 575 P.2d 1053, 1055 (Utah 1978) (implying that when terms

---

**10.** The U.S. Court of Appeals for the Fifth Circuit held further in *West Texas Transmission, L.P., v. Enron Corp.,* that "a purported acceptance which leaves the property owner 'as well off' as a third party offer, but which modifies, adds to or otherwise qualifies the terms of the offer, generally constitutes a rejection of the option and a counter-offer." 907 F.2d 1554, 1565 (5th Cir.1990).

are added in good faith to a triggering offer, and not with the ulterior purpose of defeating a right of first refusal in the property, the terms of the triggering offer must be matched exactly).[11]

Many jurisdictions, on the other hand, do not require a preemptioner to match immaterial terms found in a triggering offer. *See, e.g., Prince v. Elm Inv. Co.,* 649 P.2d 820, 825 (Utah 1982) (quoting *Brownies Creek Collieries, Inc. v. Asher Coal Mining Co.,* 417 S.W.2d 249, 252 (Ky.1967) ("[I]f the holder of the right of first refusal cannot meet exactly the terms of the conditions of the third person's offer, *minor variations which obviously constitute no substantial departure should be allowed.* And defeat of the right of refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith . . . .") (emphasis added)); *Coastal Bay Golf Club, Inc. v. Holbein,* 231 So.2d 854, 858 (Fla.Dist.Ct.App.1970) ("One offer to purchase matches another only if the *essential terms* of the offers are identical.") (emphasis added) (internal citations omitted); *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 96 Wash.2d 973, 634 P.2d 837, 840 (1981) ("[A]n acceptance of an offer must always be identical with the terms of the offer, or there is no meeting of the minds and no contract. A purported acceptance that changed the terms of an offer in *any material respect* may

---

11. In *Weber Meadow–View Corp. v. Wilde,* 575 P.2d 1053, 1055 (Utah 1978), Weber Meadow–View Corporation held a right of first refusal in real property located in Summit County, Utah. The property owner, Florence Wilde, received an offer to purchase the property for $200,000, which consisted of the conveyance of a particular home stated to be worth $48,000, and the balance paid in cash. *Weber Meadow–View Corp.,* 575 P.2d at 1054. When Weber Meadow–View attempted to exercise its preemptive right, the corporation offered $200,000, which would include any piece of real property selected by the seller, with a value of up to $50,000. *Id.* In concluding that the corporation had not exercised effectively its right of first refusal, the Supreme Court of Utah determined that "the terms upon which the [property owner] would sell her property remains her exclusive prerogative so long as she acts in good faith . . . ," even though the inclusion of unique consideration made it impossible for the corporation to match exactly the terms of the triggering offer. *Weber Meadow–View Corp.,* 575 P.2d at 1055.

operate as a counteroffer....") (emphasis added); *Matson v. Emory*, 36 Wash.App. 681, 676 P.2d 1029, 1031, 1033 (1984) (holding that the exercise of a preemptive right constitutes a counter-offer, not an acceptance, when the offer differs *materially* from the triggering offer) (emphasis added); *John D. Stump & Assoc., Inc. v. Cunningham Mem'l Park, Inc.*, 187 W.Va. 438, 419 S.E.2d 699, 705 (1992) ("[W]here the acceptance of a pre-emptive rightholder varies *materially* from the terms of the third party's offer, it is viewed as a rejection of the seller's offer and terminates the option right.") (emphasis added).

Existing Maryland law is not particularly instructive regarding the protocols for the proper exercise of a right of refusal, especially in light of the rather unique factual circumstances of this case.[12] The Court of Special Appeals, however,

---

12. Maryland courts have had few opportunities to address whether a preemptioner has exercised effectively its right of first refusal when it omits or alters terms of the triggering offer. In *Yorkridge Service Corp. v. Boring*, the defendant-grantors had granted to the plaintiff-preemptioners a right of first refusal in the subject property, which option required the exercise to be "upon the same terms and conditions contained in such [triggering offer]." 38 Md.App. 624, 625, 382 A.2d 343, 343 (1978). The property owners received an offer to purchase the property for the sum of $224,000 and, shortly thereafter, gave notice to the preemptioners of the triggering offer. When the corporate option holder attempted to exercise its right of first refusal, it reduced the purchase price by the amount of the brokerage commission to be paid by the property owner. *Yorkridge Service Corp.*, 38 Md.App. at 625–26, 382 A.2d at 344. The rationale behind this reduction was that, by exercising its right of refusal, the sale was beyond the scope of the brokerage agreement such that the property owner would not be obligated to pay the brokerage commission. *Yorkridge Service Corp.*, 38 Md.App. at 626, 382 A.2d at 344. The Court of Special Appeals, relying on *Katz v. Pratt St. Realty Co.*, 257 Md. 103, 262 A.2d 540 (1970), held that the preemptioner had not exercised validly its right of first refusal because the exercise did not contain the same terms as the triggering offer. The intermediate appellate court did not determine, however, whether an exercise of the rightholder's option must match exactly, or rather match only the *material* terms of the triggering offer. Because the purchase price is an essential term of any land sale contract, *see, e.g., Vary v. Parkwood Homes*, 199 Md. 411, 417, 86 A.2d 727, 730 (1952), any modification of the price term necessarily would be a material alteration of the triggering offer. Thus, the result likely would

quoting *Coastal Bay Golf Club, Inc.* and *Matson*, in its unreported opinion in the present case held that "[i]f the preemptioner wishes to exercise his rights, his offer *must not vary materially* from the offer received by the landowner." (emphasis in original). Reported Maryland cases, at least in passing, have commented upon the contents of the purported exercise of a right of first refusal. In *Ferrero Construction Co.*, for example, while outlining the factual background of the case, the Court stated that the preemptioner "submitted a contract that in its *essential terms* conformed to the third party's offer." 311 Md. at 563, 536 A.2d at 1138 (emphasis added). The primary dispute in *Ferrero Construction Co.*, however, involved not the contents of the preemptioner's exercise of its right of first refusal, but rather whether the preemptive right violated the Rule Against Perpetuities. Thus, while Maryland requires generally the literal matching of terms in cases involving the formation of binding contracts, the cases focusing specifically on rights of first refusal are ambiguous at best in this regard.

## C. Good Faith Requirement.

We need not decide, in the posture of the present case, whether a holder of a right of first refusal must match literally all the terms in the triggering offer in order to exercise its right because there is generated on this record a genuine dispute of material fact as to whether the Lanes and the Thomases (or one o f them) inserted, in bad faith, the "no mining" clause as a "poison pill" in order to discourage or frustrate Bramble from exercising its right of first refusal.

█ In considering whether Petitioner exercised effectively its right of first refusal, there are several countervailing interests to be considered. On one hand, there is a significant interest in promoting the free alienability and marketability of land. A person or entity generally should have primary control over the disposition of property he, she, or it owns.

---

have been the same under either the mirror image rule or materiality scrutiny. The present case does not present such a clear-cut situation.

*West Texas Transmission, L.P.,* 907 F.2d at 1563 (holding that when a property owner receives an offer to purchase a piece of property encumbered by a preemptive right, "the owner of [the] property subject to a right of first refusal remains master of the conditions under which he will relinquish his interest...."); *Coastal Bay Golf Club, Inc.,* 231 So.2d at 858 ("One who owns property has a right to dispose of that property in any lawful way he chooses."); *Matson,* 676 P.2d at 1033 (holding that in the context of a preemptive right, "the property owner should retain primary control over disposition of the property"); *see also Selig v. State Highway Admin.,* 383 Md. 655, 861 A.2d 710 (2004) (applying the Rule Against Perpetuities to a right of refusal, because such a right poses a restraint on the free alienation of property when improperly executed) (quoting *Ferrero Constr. Co.,* 311 Md. at 573–74, 536 A.2d at 1142–43).

■ On the other hand, we must consider the fact that Petitioner acquired, at the time RWL conveyed its preemptive right in the Property, an equitable property interest in the Property. *Ayres v. Townsend,* 324 Md. 666, 674–75, 598 A.2d 470, 474 (1991) ("[A preemptive right] is an interest in property, and not merely a contractual right, whereby the preemptioner acquires an equitable right in the property, which vests only when the property owner decides to sell."); *Westpark, Inc.,* 225 Md. at 449–50, 171 A.2d at 743. When the Lanes granted initially the right of first refusal to RWL, the preemptive right was the product of a bargained-for exchange voluntarily entered by the Lanes. As such,

> one who enters into a contract must cooperate in good faith to carry out the intention the parties had in mind when it was made; and that he should not be permitted to engage in any subterfuge or devious means to prevent the other party from performing, and then use that as an excuse for failing to keep his own commitment.

*Weber Meadow–View Corp.,* 575 P.2d at 1055.

With that in mind, even jurisdictions which require a preemptioner to match exactly the terms of a triggering offer

(i.e., a lack of materiality of the omitted terms is no defense) recognize the following three exceptions to that rule: (1) the property owner may waive exact matching, either through actions or express waiver; (2) proper names need not be matched because to hold otherwise would require the preemptioner to change its name in order to exercise the first option of purchase; and (3) the property owner, for the purpose of discouraging the holder of the preemptive right from exercising its right of first refusal, may not insert into the triggering offer terms which its knows will be repugnant to the holder.[13] *Miller*, 87 F.3d at 227–28. In other words, the property owner, and possibly the third-party purchaser, must not be allowed to add in bad faith terms to the triggering offer which are intended to nullify the right of first refusal. *West Texas Transmission, L.P.*, 907 F.2d at 1563 (holding that "the owner of property subject to a right of first refusal remains master of the conditions under which he will relinquish his interest, as long as those conditions are commercially reasonable, imposed in good faith, and not specifically designed to defeat the preemptive rights.") (citations omitted); *Weber Meadow–View Corp.*, 575 P.2d at 1055 (Utah 1978) ("[T]he decision as to ... the terms of upon which the optioner would sell her property remains her exclusive prerogative so long as she acts in good faith and without any ulterior purpose to defeat the right of the optionee.").[14]

---

13. The cases upon which we rely impose expressly this duty of good faith upon the property owner. We could find no cases which require explicitly a third-party purchaser to exercise good faith in negotiating a triggering contract for the sale of the property. In some cases, there have been arguments made that the third-party, for its own conduct in this regard, should be liable for intentional interference with the preemptioner's right of first refusal. *See, e.g., Prince v. Elm Inv. Co.*, 649 P.2d 820, 821 (Utah 1982).

14. Jurisdictions which consider the materiality of omitted or altered terms analyze also the motive behind insertion of specific contract provisions into the triggering offer. *See Brownies Creek Collieries, Inc. v. Asher*, 417 S.W.2d 249, 252 (1967) ("[D]efeat of the right of first refusal should not be allowed by use of special, peculiar terms or conditions not made in good faith."); *Matson*, 676 P.2d at 1031 ("The right [of first refusal] is a valuable contract right which should not be

Even the cases upon which Respondents rely impose a duty of good faith in forming a triggering offer. Respondents rely specifically on *Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon L.P.*, 76 F.3d 1003, 1007 (9th Cir.1996) for the proposition that "[u]nder Oregon law, an acceptance of an offer must be 'positive, unconditional, unequivocal, and unambiguous'." The U.S. Court of Appeals for the Ninth Circuit indeed interpreted Oregon law to require a definite response in order effectively to form a contract. The Ninth Circuit, however, concluded ultimately that "there is an implied covenant of good faith and fair dealing" in every contract formed under Oregon law, and that the grantor of the preemptive right had violated this covenant through its actions. Specifically, the court held that "[t]o permit the transfer of a shell company as a way around the first refusal provisions was 'an artifice intended to thwart plaintiff's legitimate contractual expectation.'" Thus, even in states which require positive, unconditional, and unequivocal acceptance, there is an implied covenant that a party will act in good faith not to defeat improperly a bargained-for preemptive right.

Finally, and most importantly, our case law supports the imposition of an implied duty on the part of the property owner and third-party purchaser to act in good faith. In *Straley v. Osborne*, we addressed whether a lessee, who held a first option to purchase leased land, was able to set aside the sale of the premises to a third-party after the lessee failed to make any attempt to exercise its right. The property owner sold to Straley a junkyard business, and on the same day, leased to Straley the premises upon which the business was located. *Straley*, 262 Md. at 515, 278 A.2d at 65. The junkyard was located on approximately seven acres of a ten-

---

rendered illusory by imposing requirements that are impossible to meet."); *Coastal Bay Golf Club, Inc. v. Holbein*, 231 So.2d 854, 857 (Fla.Dist.Ct.App.1970) ("A right of first refusal is a right to elect to take specified property at the same price and on the same terms and conditions as those continued in *good faith offer* by a third person. . . .") (emphasis added).

acre tract owned by the property owner.[15] Included in the lease agreement was a "first option of purchase" whereby Straley would have the first option of buying the property should the property owner decide to sell. *Straley,* 262 Md. at 516, 278 A.2d at 66. After some time, the property owner's used car business began to fail, and he listed for sale the entire ten-acre tract in order to raise money. Osborne, a third-party purchaser, made an offer to buy the entire ten-acre piece of land. The owner's real estate agent contacted Straley soon thereafter, informing the preemptioner that he now had the opportunity to exercise his right of first refusal. *Straley,* 262 Md. at 517–18, 278 A.2d at 66–67. Straley failed to exercise timely his preemptive right,[16] but subsequently brought suit in order to set aside the sale of the property to Osborne.

Even though we ultimately concluded that Straley had failed to exercise effectively his right of first refusal, we reasoned that "the [property owner-lessor] cannot act in derogation of the [holder-lessee's] 'first option' rights in the leased premises." *Straley,* 262 Md. at 524, 278 A.2d at 70. Specifically, the Court considered carefully the circumstances of the case in order to ensure that the lessor would not be able to "render the lessee's bargained for 'first option' a nullity by merely including it in a larger tract being offered for sale." Despite the preemptive rightholder's equitable interest in the property, his inaction after being notified of the sale rendered ineffective his after-the-fact attempt to exercise the first option of purchase.

■ We believe that imposing upon the property owner and third-party purchaser an implied duty of good faith and fair

---

15. The property owner maintained other business interests, including a used-car dealership, Cadillac Jack Enterprises, Inc., which was located on the other three acres of the ten-acre lot. *Straley v. Osborne,* 262 Md. 514, 516, 278 A.2d 64, 66 (1971).

16. Straley was allegedly informed of the proposed sale several times. Each time, he refused to exercise the option, claiming that the purchase price was too high. *See generally Straley,* 262 Md. at 517–21, 278 A.2d at 66–68.

dealing strikes the proper balance. A good faith requirement preserves a property owner's right to dispose of property as he, she, or it deems appropriate, thus maintaining marketability of the property. This approach protects, at the same time, the equitable property interest that the preemptioner holds in the encumbered property. Imposing this duty of good faith on the parties comports additionally with the laws of offer and acceptance followed generally in Maryland. *Port East Transfer, Inc. v. Liberty Mut. Ins. Co.*, 330 Md. 376, 385, 624 A.2d 520, 524 (1993) ("Even when the parties are silent on the issue, the law will impose an implied promise of good faith."); *Am. Trading & Prod. Corp. v. United States*, 172 F.Supp. 165, 167 (D.Md.1959) ("[T]here is an implied provision of every contract . . . that neither party to the contract will do anything to prevent performance thereof by the other party. . . .") (applying Maryland law) (quoting *George A. Fuller Co. v. United States*, 108 Ct.Cl. 70, 69 F.Supp. 409, 411 (1947)). We conclude, therefore, that the " 'terms upon which the [property owner] would sell her property remains her prerogative so long as she acts in good faith.' " *Matson*, 676 P.2d at 1032 (quoting *Weber Meadow–View Corp.*, 575 P.2d at 1055 ("[T]he decision as to . . . the terms upon which the [owner] would sell her property remains her exclusive prerogative so long as she acts in good faith and without any ulterior purpose to defeat the right of the [preemptioner].")).

## C. Application

Good faith ordinarily is a question of fact for summary judgment purposes. *Rite Aid Corp. v. Hagley*, 374 Md. 665, 684, 824 A.2d 107, 119 (2003). As such, "questions involving determinations of good faith which involve intent and motive 'ordinarily' are not resolvable on a motion for summary judgment." *Rite Aid Corp.*, 374 Md. at 684, 824 A.2d at 119; *Gross v. Sussex, Inc.*, 332 Md. 247, 256, 630 A.2d 1156, 1160 (1993) ("[S]ummary judgment is inappropriate when intent and motive are critical to the proof of a case.") (citing *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, 464 (1962)); *Goldstein v. Miles*, 159

Md.App. 403, 446–47, 859 A.2d 313, 338 (2004). Even cases involving good faith, motive, or intent may be resolved on summary judgment, however, if there are no material disputes as to the facts of the case. *Rite Aid Corp.*, 374 Md. at 685, 824 A.2d at 119 (quoting *Gross*, 332 Md. at 257, 630 A.2d at 1161).

Based on the record here, we conclude that summary judgment was an improper means of determining the rights of the parties. While the "no mining" clause could have been inserted in the Thomas Offer for some legitimate reason, there is evidence in the record, if believed, that the Lanes and/or the Thomases inserted the prohibition on mining as a "poison pill" in order to discourage Bramble from exercising its right of first refusal. It was well-documented at all court levels that Bramble was mining, for sand and gravel, land adjacent to the Property since at least 7 May 1993. Thus, at the time the triggering offer was made, it could have been apparent to both the Lanes and the Thomases [17] that Petitioner intended to use the Property for the purposes of mining. A "no mining" clause would defeat that purpose of Petitioner's desire to own the Property, thereby frustrating Petitioner's bargained-for equitable interest in the Property. Respondents argue, and the intermediate appellate court agreed, that the inclusion of the use restriction in a hand-written addendum, for the purposes of analyzing the materiality of the omitted term, indicates the importance of the provision to the sellers. The manner in which the provision was added, i.e., by a hand-written addendum attached to the contract of sale, may support an inference that the "no mining" clause was an after-the-fact method of frustrating Bramble's preemptive right by including a term or condition which the parties knew Petitioner would not accept.[18]

---

**17.** As indicated on the Addendum, Mrs. Thomas was a licensed real estate agent in the area. Thus, an inference could be drawn reasonably that she was aware of the uses to which neighboring landowners put parcels of land adjacent to the Property.

**18.** At oral argument, disparate views were advanced as to who added the "no mining" provision to the Thomas Offer. Counsel for Petitioner

■ We agree with Respondents that the Lanes were free to structure the sale of their property in any way they saw fit; however, the Lanes and the Thomases were obliged to comport with notions of good faith and fair dealing with regard to Bramble's preemptive right in setting the terms of the sale. If an aggrieved holder of a right of first refusal satisfies a court that the property owner's and/or third-party's actions are arbitrary or performed in bad faith, the owner of the property encumbered by the preemptive right must articulate a "reasonable justification" for its actions. *Prince*, 649 P.2d at 825. Whether a specific term or condition is commercially reasonable, i.e., inserted in good faith, is a case-by-case determination, and must be resolved by examining the circumstances peculiar to the case. Id. Thus, if Bramble is able to establish that the Lanes and/or the Thomases inserted, in bad faith, into the triggering offer the "no mining" provision in order to defeat the purpose of Bramble's desire to own the Property, the burden will shift. It will then be incumbent upon the Lanes and/or the Thomases to articulate a reasonable justification for imposing such a use restriction upon the Property. If they are unable to produce an adequate justification for the "no mining" clause, Bramble should be permitted to exercise its preemptive right without satisfying literally the added term of the triggering offer.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AND TO REMAND THE CASE TO THE CIRCUIT**

claimed that the prohibition was added by the Thomases. Counsel's premise was that the Respondents, by virtue of Mrs. Thomas being a real estate agent in the area, knew of neighboring uses, and that the Thomases insisted on the clause to frustrate Bramble's right of first refusal.

Counsel for the Lanes, on the other hand, argued that because the provision was added in the addendum, the mining restriction was material to the sellers. In other words, counsel's argument could be understood to mean that the Lanes insisted on the "no mining" provision.

COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.